# IN THE SUPREME COURT OF TEXAS

════════════
No. 12-0348
════════════


DAVID HAMRICK, MAGGIE HAMRICK, SUE BERTRAM AND STEVE BERTRAM, PETITIONERS AND CROSS-RESPONDENTS,

v.

TOM WARD AND BETSEY WARD, RESPONDENTS AND CROSS-PETITIONERS

═══════════════════════════════════════════════════════
ON PETITIONS FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued September 11, 2013**


JUSTICE GUZMAN delivered the opinion of the Court.


This case presents the Court with an opportunity to provide clarity in an area of property law that has lacked clarity for some time: implied easements. For over 125 years, we have distinguished between implied easements by way of necessity (which we refer to here as "necessity easements") and implied easements by prior use (which we refer to here as "prior use easements"). We created and have utilized the necessity easement for cases involving roadway access to previously unified, landlocked parcels. Roadways by nature are typically substantial encumbrances on property, and we accordingly require strict, continuing necessity to maintain necessity easements. By contrast, we created and have primarily utilized the prior use easement doctrine for lesser improvements to the landlocked parcel, such as utility lines that traverse the adjoining tract. We have required, to some

degree, a lesser burden of proof for prior use easements (reasonable necessity at severance rather than strict and continued necessity) because they generally impose a lesser encumbrance on the adjoining tract (*e.g.*, a power line compared to a roadway). Today, we clarify that the necessity easement is the legal doctrine applicable to claims of landowners asserting implied easements for roadway access to their landlocked, previously unified parcel.

Here, a party claims a road that was necessary for access to its landlocked, previously unified parcel is a prior use easement. The trial court and court of appeals agreed. We hold the necessity easement doctrine governs this claim. Because we clarify the law of easements, we reverse the court of appeals' judgment and remand to the trial court for the party to elect whether to pursue such a claim.

## I. Background

In 1936, O. J. Bourgeois deeded 41.1 acres of his property in Harris County, Texas to his grandson, Paul Bourgeois. During Paul's ownership, a dirt road was constructed on the eastern edge of the 41.1 acre tract, providing access from the remainder of the land to a public thoroughfare, Richardson Road. In 1953, Paul deeded two landlocked acres of the tract to Alvin and Cora Bourgeois, severing the 41.1 acres into two separate parcels. Alvin and Cora used the dirt road to access their two acres. The two acre tract was subsequently transferred to Henry and Bettie Bush in 1956, who sold the land to Henry Gomez in 1957. In 1967, Henry Gomez and his wife, Anna Bell, built a house on the two acre tract with a listed address of 6630 Richardson Road. Anna Bell became the sole owner of the two acre tract when Henry died in 1990.

2

In the late 1990s, developer William Cook began construction of the Barrington Woods subdivision on the remaining acreage of Paul Bourgeois' property. Cook planned to close the dirt road Anna Bell used to access her two acres and to construct a paved driveway for her to directly access her property from a newly added paved street. But Anna Bell's land was not platted, and Harris County required a one foot reserve and barricade between her property and the new street, which rendered the dirt road her only means of access. In February 2000, Cook unilaterally filed a special restriction amendment to the subdivision's deed restrictions. The special restriction purported to create a "Prescriptive (Rear Access) Easement" along the southeast property line of Lots 3 and 4. It further stated, "[t]his Prescriptive Easement will also be used by Annabelle [sic] Gomez," and allowed Anna Bell a fifteen foot wide easement along the dirt road for herself, her family, social guests, and service vehicles under 6,200 pounds. Anna Bell was not a party to the special restriction, never discussed its contents with Cook, and did not learn of the existence of the document until September 2005.

David and Maggie Hamrick, as well as Sue and Steve Bertram, (collectively "the Hamricks") purchased homes on Lots 3 and 4 in Barrington Woods—the property Anna Bell's access easement traversed to reach Richardson Road. The developer told the Hamricks initially and at closing that when Anna Bell sold her home, the property would be platted, her access to the main road would open, and the Hamricks would recover full use of the dirt road.

In February 2004, before the Hamricks closed on their home, Anna Bell sold her property to Tom and Betsey Ward (collectively "the Wards"), subject to a life tenancy. After purchasing the property, the Wards continued to use the dirt road. The Wards then reinforced the dirt road with

3

gravel and made use of the road to construct a new home on the land. The Hamricks sued to enjoin the Wards from using the dirt road. The trial court granted the Hamricks a temporary injunction in April 2006, which prevented the Wards from using the easement for construction of their home. As a result, the Wards platted the property, the barrier and reserve were removed, and a driveway was built to provide the Wards access to the paved road and allow them to complete construction. Nonetheless, the Wards pursued a counterclaim, arguing they had an implied, prior use easement to use the dirt road and requesting the trial court enter a judgment declaring an unrestricted twenty-five foot easement connecting their property to Richardson Road.

The trial court granted the Wards' motion for summary judgment, finding they conclusively proved the existence of a prior use easement running from the Wards' property across the rear of the Hamricks' property to Richardson Road. The trial court did not specifically designate a width for the easement. The trial court denied the Hamricks' motion for summary judgment, which raised affirmative defenses of bona fide purchaser, estoppel, and waiver. Finally, the trial court awarded attorney's fees of $215,000 to the Wards and $200,000 to the Hamricks.

The Hamricks appealed, arguing the Wards failed to prove both beneficial use of the easement prior to severance and continuing necessity of the easement. The Hamricks further argued that the trial court erred in denying summary judgment on their bona fide purchaser, estoppel, and waiver defenses. The Wards cross-appealed, contending the trial court failed to designate a width for the easement and erroneously awarded attorney's fees to the Hamricks.

The court of appeals found the summary judgment evidence conclusively established beneficial use of the road prior to severance as well as the necessity of the road, affirming the trial

4

court. 359 S.W.3d 770, 776–79. The court unanimously held that the Wards were required to prove necessity at the time of severance, not a continuing necessity as the Hamricks proposed. *Id.* at 777. The court similarly overruled the Hamricks' arguments concerning the affirmative defenses of estoppel and waiver. *Id.* at 786–87. But the court of appeals determined a fact issue remained with respect to the bona fide purchaser defense, such that the trial court erred in denying the Hamricks' motion for summary judgment and granting the Wards' motion. *Id.* at 785. The dissent noted that reasonable jurors would not have differed concerning the fruits of an investigation, so the trial court's summary judgment should stand. *Id.* at 789–90 (Frost, J., concurring and dissenting).

With respect to the Wards' issues on cross appeal, the court of appeals declined to consider whether the trial court erred by failing to specify an easement width, and instead left this issue for the trial court to re-examine on remand. *Id.* at 787. It also reversed and remanded the attorney's fees award. *Id.* Both parties petitioned this Court for review.

## II. Discussion

The parties raise three distinct issues: (1) whether the Wards have an implied easement over the Hamricks' land despite a lack of continued necessity; (2) whether the Hamricks qualify as bona fide purchasers so as to take the land free of any easement the Wards may have; and (3) the propriety of the trial court's award of attorney's fees. Our disposition of the first issue precludes us from reaching the remaining two.

### A. Implied Easement

The Hamricks argue the court of appeals erred by concluding the Wards were only required to demonstrate the necessity of the easement at the time of severance. The Wards counter that we

5

have never before required continued necessity for prior use easements. As explained below, we determine the applicable doctrine for roadway access to previously unified, landlocked parcels is the necessity easement.

Under Texas law, implied easements fall within two broad categories: necessity easements and prior use easements. *See Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984) (necessity easement); *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966) (prior use easement). But the unqualified use of the general term "implied easement" has sown considerable confusion because both a necessity easement and a prior use easement are implied and both arise from the severance of a previously unified parcel of land.[1] *Seber v. Union Pac. R. Co.*, 350 S.W.3d 640, 648 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Further contributing to this confusion, courts have used a variety of terms to describe both necessity easements[2] and prior use easements.[3] Despite imprecise semantics, we have maintained separate and distinct doctrines for these two implied easements for

---

[1] The Restatement of Property may also have added to confusion in these cases. Originally, the Restatement did not differentiate between necessity easements and prior use easements, and instead merely listed a series of factors to be considered by courts to determine whether an easement ought to be implied. RESTATEMENT OF PROP. § 476 (1944). But the Restatement Third contains separate sections with separate definitions, one for "Servitudes Created by Necessity" and one for "Servitudes Implied from Prior Use." RESTATEMENT (THIRD) OF PROP.: SERVITUDES §§ 2.12, 2.15 (2000).

[2] As one court of appeals has rightly observed: "It is apparent that whether an easement is denominated a 'way of necessity,' an 'easement by necessity,' an 'easement of necessity,' 'an implied easement by necessity,' an 'implied reservation of an easement by necessity,' or an 'implied grant of a way of necessity' the elements of each are identical." *Daniel v. Fox*, 917 S.W.2d 106, 111 (Tex. App.—San Antonio 1996, writ denied). This Court alone has used a wide variety of terms in reference to implied easements by way of necessity. *See, e.g.*, *Koonce*, 663 S.W.2d at 452 ("implied easement by necessity"); *Othen v. Rosier*, 226 S.W.2d 622, 625—26 (Tex. 1950) ("easement of necessity," "way of necessity," and "implied reservation of a right of way by necessity"); *Bains v. Parker*, 182 S.W.2d 397, 398 (Tex. 1944) ("right of way by necessity"); *Alley v. Carleton*, 29 Tex. 74, 78 (1867) ("way of necessity").

[3] This Court alone has employed three terms to refer to a prior use easement: "implied easement appurtenant," *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962), "easement by implication," *Bickler*, 403 S.W.2d at 356, and "quasi-easement," *Ulbricht v. Friedsam*, 325 S.W.2d 669, 677 (Tex. 1959).

well over a century. Today, we clarify that a party claiming a roadway easement to a landlocked, previously unified parcel must pursue a necessity easement theory.

## 1. Necessity Easement

"Anyone who grants a thing to someone is understood to grant that without which the thing cannot . . . exist." James W. Simonton, *Ways by Necessity*, 25 COLUM. L. REV. 571, 572 (1925). With similar emphasis on this ancient maxim, we recognized in 1867 that a necessity easement results when a grantor, in conveying or retaining a parcel of land, fails to expressly provide for a means of accessing the land. *Alley v. Carleton*, 29 Tex. 74, 78 (1867). When confronted with such a scenario, courts will imply a roadway easement to facilitate continued productive use of the landlocked parcel, rather than rigidly restrict access. *Id*.

To successfully assert a necessity easement, the party claiming the easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity and not a mere convenience; and (3) the necessity existed at the time the two estates were severed. *Koonce*, 663 S.W.2d at 452. As this analysis makes clear, a party seeking a necessity easement must prove both a historical necessity (that the way was necessary at the time of severance) and a continuing, present necessity for the way in question. *Id.* Once an easement by necessity arises, it continues until "the necessity terminates." *Bains*, 182 S.W.2d at 399 ("[A] way of necessity is a temporary right, which arises from the exigencies of the case and ceases when the necessity terminates."); *see also Alley*, 29 Tex. at 76 (providing "if the necessity for its use ceases, the right also ceases"). The temporary nature of a necessity easement is thus consistent with the underlying rationale; that is, providing a means of roadway access to land only so long as no

7

other roadway access exists. *Alley*, 29 Tex. at 78 ("A way of necessity, however, must be more than one of convenience, for if the owner of the land can use another way, he cannot claim by implication to pass over that of another to get to his own.").

Accordingly, it is no surprise that the balance of our jurisprudence on necessity easements focuses on roadway access to landlocked, previously unified parcels. *See Koonce*, 663 S.W.2d at 452 (assessing a roadway easement by the standard of an easement by necessity); *Duff v. Matthews*, 311 S.W.2d 637, 641 (Tex. 1958) (same); *Othen v. Rosier*, 226 S.W.2d 622, 626 (Tex. 1950) (same); *Bains*, 182 S.W.2d at 399 (same); *Alley*, 29 Tex. at 78 (same).

## 2. Prior Use Easements

Two decades after we established the necessity easement doctrine for roadways in *Alley*, we found that framework to be ill suited for other improvements that nonetheless are properly construed as implied easements. In *Howell v. Estes*, we addressed use of a stairwell to access two buildings. 12 S.W. 62, 62 (Tex. 1888). In *Howell*, a father had constructed adjoining two-story buildings that jointly used a stairwell in one building. *Id.* When he died, he left one building to his son and the other to his daughter. *Id.* In the wake of a familial dispute, the sibling who owned the building with the stairwell denied use of it to the other sibling. *Id.*

Our preexisting doctrine for necessity easements could not adequately address such a situation. The party seeking the easement likely could not claim strict necessity, as he was still able to access his land and the bottom floor of his building.[4] *Id.* But recognizing that the law should

---

[4] We recognized that he could access his second floor by building a stairwell for the then considerable sum of $50. *Howell*, 12 S.W.2d at 62.

8

afford a remedy, we established an alternate doctrine for assessing whether to recognize implied easements for improvements across previously unified adjoining property as follows:

> [I]f an improvement constructed over, under, or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both be open and usable and permanent in its character . . . the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed.

*Id.* at 63. Unlike necessity easements, which are implied out of the desire to avoid the proliferation of landlocked—and therefore, unproductive—parcels of land, the rationale underlying the implication of an easement based on prior use is not sheer necessity. Rather, as this Court has expressly recognized, "[t]he basis of the doctrine [of prior use easements] is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (Tex. 1952). There is a presumption that parties contracting for property do so "with a view to the condition of the property as it actually was at the time of the transaction," and therefore, absent evidence to the contrary, such conditions which openly and visibly existed at the time are presumed to be included in the sale. *Miles v. Bodenheim*, 193 S.W. 693, 696–97 (Tex. Civ. App.—Texarkana 1917, writ ref'd).

This Court has explained the requirements for establishing a prior use easement as "fairly standardized," such that the party claiming a prior use easement must prove: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the use of the claimed easement was open and apparent at the time of severance; (3) the use was continuous, so the parties must have intended that its use pass by grant; and (4) the use must be necessary to the use of the dominant

estate. *Drye v. Eagle Rock Ranch*, 364 S.W.2d 196, 207–08 (Tex. 1962). Because the actual intent of the parties at the time of severance is often elusive, these factors effectively serve as a proxy for the contracting parties' intent.

It is worth noting that we have elevated the proof of necessity for a subset of prior use easement cases. A prior use easement may arise either by reservation (where the grantor of the previously unified parcel retains the landlocked parcel) or by grant (where the grantor conveys the landlocked parcel). We have expressly held that to establish a prior use easement implied by reservation, a party must demonstrate strict necessity with respect to the easement claimed. *Mitchell*, 246 S.W.2d at 168. But, with respect to a prior use easement implied by grant, some ambiguity remains as to whether a party must demonstrate strict necessity or reasonable necessity for a party to succeed. *See Drye*, 364 S.W.2d at 208–09. Because we hold below that the Wards must pursue an implied easement by way of necessity theory, we need not reach this question.

The factual circumstances in which we have discussed the prior use easement illuminate its purpose. We have used the prior use easement doctrine to assess situations such as use of a stairwell in an adjacent building,[5] grazing cattle,[6] and recreational use of adjoining property.[7] In addition to access, we have also discussed the application of the prior use easement doctrine to "a part[ition] wall," "a drain or aqueduct," "a water [gas] or sewer line into the granted estate," "a drain from the land," "light and air," "lateral support," and "water." *Drye*, 364 S.W.2d at 207–08. In light of the

_____

[5] *Howell*, 12 S.W. at 62.

[6] *Ulbricht*, 325 S.W.2d at 677.

[7] *Drye*, 364 S.W.2d at 208.

10

history and the purpose behind these two types of implied easements, we clarify when parties should

pursue each type of easement.

### 3. Roadway Easements to Landlocked, Previously Unified Parcels Must Be Tried as Implied Easements by Way of Necessity

The Hamricks claim that we should inject continued necessity as a requirement for prior use

easements. The Wards claim that, despite the confusion between necessity easements and prior use

easements, we have never required continued necessity for prior use easements. We view the

pertinent question not as whether continuing necessity is required of prior use easements but rather

as whether the Wards' use of the roadway is appropriate to assess under the prior use easement

doctrine.

We clarify that courts adjudicating implied easements for roadway access for previously

unified, landlocked parcels must assess such cases under the necessity easement doctrine.[8]

Admittedly, the express elements required for prior use easements do not restrict themselves to

certain easement purposes. *Drye*, 364 S.W.2d at 207–08. As a result, we have previously

encountered a party asserting a prior use easement for a roadway to access his previously unified,

landlocked parcel. *See Bickler*, 403 S.W.2d at 357.[9] But we developed the two types of implied

easements for discrete circumstances. The less forgiving proof requirements for necessity easements

---

[8] There exist other types of easements, such as prescriptive easements, easements by estoppel, and express easements. *Drye*, 364 S.W.2d at 204. The Wards also pleaded a prescriptive easement claim, which will be within the scope of our remand to the trial court.

[9] Before *Bickler*, two parties in this Court sought to assess easements for improvements and roadway access together under the prior use easement doctrine. *See Ulbricht*, 325 S.W.2d at 677 (granting prior use easement for grazing cattle and ingress and egress to a lake); *Mitchell*, 246 S.W.2d at 164 (assessing a driveway and shed as prior use easements).

11

(strict and continuing necessity) simply serve as acknowledgment that roadways typically are more significant intrusions on servient estates. By contrast, improvements at issue in prior use easements (*e.g.*, water lines, sewer lines, power lines) tend to involve more modest impositions on servient estates. Accordingly, for such improvements, we have not mandated continued strict necessity but instead carefully examine the circumstances existing at the time of the severance to assess whether the parties intended for continued use of the improvement.[10] Our clarification today in no way should impact the continued ability of such improvements to qualify as prior use easements.

Applying this distinction to the Wards' claimed easement does not entail prolonged analysis. Their claimed easement concerns a roadway to access a previously unified, landlocked parcel. This is precisely the factual scenario for which we created the necessity easement doctrine well over a century ago, and here, the Wards must pursue a necessity easement rather than a prior use easement.

### 4. Remand

The Wards only pleaded theories of a prior use easement and easement by prescription in the trial court. The trial court and court of appeals held that the Wards conclusively established a prior use easement. Ordinarily, "parties are restricted in the appellate court to the theory on which the case was tried in the lower court." *Safety Cas. Co. v. Wright*, 160 S.W.2d 238, 245 (Tex. 1942). Accordingly, we procedurally cannot hold that the Wards prevailed on a theory they have not advanced in the trial court. However, we will not foreclose the Wards from bringing a necessity easement claim in light of our clarification of the law. "We have broad discretion to remand for a

---

[10] We have, however, required strict necessity when a grantor reserves for himself a prior use easement. *Mitchell*, 246 S.W.2d at 168.

new trial in the interest of justice where it appears that a party may have proceeded under the wrong legal theory." *Boyles v. Kerr*, 855 S.W.2d 593, 603 (Tex. 1993). Moreover, "[r]emand is particularly appropriate where the losing party may have presented his or her case in reliance on controlling precedent that was subsequently overruled." *Id.* As we have indicated, we have encountered at least one situation in which a party pursued a prior use easement (rather than a necessity easement) for roadway access to a previously unified, landlocked parcel. *Bickler*, 403 S.W.2d at 357. Although we refrain from opining as to whether the Wards will ultimately prevail on a necessity easement claim, our clarification of the law entitles them to the opportunity to plead and prove such a claim.

In addition to the issue of what type of easement the Wards must claim, the parties raise the issues of the Hamricks' bona fide purchaser defense and the trial court's award of attorney's fees. Our remand for the Wards to pursue a necessity easement claim precludes us from reaching either issue. We note that the court of appeals held the bona fide purchaser defense is an appropriate defense to prior use easements. 359 S.W.3d at 782. It did not address whether the bona fide purchaser defense applies to a claim the Wards had not yet raised. Accordingly, that issue remains unresolved and is before the trial court on remand. Likewise, we need not assess the propriety of the trial court's award of attorney's fees because that question will also be within the scope of the remand to the trial court.

### III. Conclusion

In sum, we have long recognized a distinction between necessity easements (which have elevated proof requirements due to the more significant encumbrance typified by roadway

13

easements) and prior use easements (which have relaxed proof requirements due to the typically lesser encumbrance of other improvements such as utility lines). Today, we clarify that one claiming an implied easement for roadway access to a landlocked, previously unified parcel must pursue a necessity easement rather than a prior use easement. Because the Wards seek an implied easement for roadway access to their landlocked, previously unified parcel, we remand for them to elect whether to pursue a necessity easement claim. TEX. R. APP. P. 60.3. We reverse the portion of the court of appeals' judgment affirming summary judgment on the Wards' prior use easement claim, and remand to the trial court for dismissal of that claim and for further proceedings consistent with this opinion.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** August 29, 2014