COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



WILLIAM A. JENTSCH, JR., §

§ No. 08-12-00287-CV

Appellant, §

§ Appeal from the

v. §

§ 97th District Court

LAKE ROAD WELDING CO., §

§ of Archer County, Texas

Appellee. §

§ (TC#2011-0090A-CV)

§

## **O P I N I O N**

Appellant, William A. Jentsch, Jr. ("Jentsch"), appeals the trial court's denial of his declaratory action for an easement by necessity. We reverse and remand.[1]

## **BACKGROUND**

At one time, Oswald Jentsch ("Oswald"), owned approximately 500 acres of land in Archer County, Texas, some of which he later sold to multiple buyers. Most of these conveyances involved the selling of parcels to the east of Oswald's acreage which is hereafter denoted as Tract 3. In 2002, Oswald executed a power of attorney in favor of his stepson, Michael Benedict. Utilizing his power of attorney, Benedict sold additional portions of Oswald's

---

[1] This case was transferred from our sister court in Fort Worth and we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

properties between 2002 and 2004.   After these sales, Oswald retained three tracts of land.   Tract 1 fronted State Highway 79, Farm-to-Market Road 1954, and Parker Road, and the southern portion of the tract bordered the northern portion of Oswald's Tract 2.   Tract 2 abutted State Highway 79 and Parker Road.   The northern property line of Tract 3 abutted the southern property line of Tract 2, but was otherwise surrounded by properties that Oswald or Benedict had sold prior to Oswald's death.   Only a few of those sales are relevant to our consideration of this appeal.

On July 9, 2004, Don, Barbara, Jerry, and Pamela Morgan purchased two of those properties from Oswald, which consisted of a 19.23-acre tract and a 220-acre tract.   The smaller tract completely bordered the southern end of Oswald's Tract 3, and the 220-acre tract bordered a significant portion of the western portion of Tract 3.

Don McClendon initially purchased a 7.5-acre parcel from Oswald in 1996, and later purchased two additional parcels on July 13, 2004.   One of the parcels purchased in 2004 consisted of a 5-acre tract.   The eastern portion of the 5-acre parcel abutted a portion of the westernmost border of Tract 3, and the western portion of the parcel bordered State Highway 79.

The other parcel conveyed in 2004 consisted of a 2.41-acre parcel which had no highway frontage access but bridged McClendon's other two parcels bordering State Highway 79 to the west and Parker Road to the east.   The northern portion of the 2.41-acre parcel abutted the southern edge of Tract 2, and the southern edge bordered the northern portion of Tract 3.[2]

Prior to the conveyance of the 2.41-acre "bridging" parcel, Oswald had been able to travel

_____

[2] When Oswald conveyed the McClendon "bridging" parcel in 2004, he expressly reserved the following right of ingress and egress:

> Grantor, for himself, his heirs, successors and assigns reserves all of the oil, gas and other minerals that are in and under the property and that may be produced from it and a reservation of the right of ingress and egress at all times for mining, drilling, exploring, operating, and developing the property for oil, gas and other minerals and for removing them from the property.

from Tract 3 to Tract 2, from which he could access a roadway, but McClendon's purchase of the "bridging" parcel had the effect of terminating Oswald's access between his Tract 2 and Tract 3 properties. On July 13, 2004, Oswald executed a "correction cash deed" effective October 3, 2003, for the purpose of correcting the legal description of Tract 1 in the prior cash deed between the parties, by which Oswald sold to McClendon the State Highway 79 and "bridging" parcels. After this conveyance, Oswald still had access to Tract 3 through two other parcels he owned, which fronted Highway 79 and abutted Tract 3.

On July 30, 2004, McClendon also executed a written "easement agreement" which granted Oswald a 16-foot wide "ingress/egress easement" along the east boundary line of McClendon's 5-acre tract for the purpose of providing Oswald ingress and egress to his property, "which is adjacent to the . . . described 5 acre tract of land."[3] McClendon's easement agreement restricted use of the easement to Oswald and his invitees and barred use by the general public. The agreement also specified that the duration of the easement was to "continue only so long as [Oswald] continues to own land adjacent to said 5 acre tract of land." McClendon made this easement agreement effective October 3, 2003.

On August 20, 2004, Appellee Lake Road Welding Co. (Lake Road Welding), owned by Don and his son, Jerry Morgan, purchased from Oswald the two remaining parcels that provided access between Tract 3 and Highway 79, and were bordered on the north by McClendon's 5-acre parcel and to the south by the Morgans' 220-acre parcel. As a result of Lake Road Welding's purchase of the two tracts between Highway 79 and Tract 3, Oswald no longer had any road access

---

[3] For simplicity, we refer to the agreement as "the McClendon easement agreement," but observe that, "Generally, an easement constitutes an interest in the land itself, while a license merely confers a privilege to do some act or acts upon the land without conveying any interest in or title to the land itself." *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex.App. –El Paso 1993, no pet.).

to Tract 3 through properties that he owned.

Jentsch served as guardian of his Uncle Oswald from 2005 until Oswald's death in 2008. On August 18, 2010, Jentsch purchased Oswald's Tracts 1, 2, and 3. Thinking that McClendon's purchase was the "last purchase" resulting in Tract 3's landlocked status, Jentsch initially made demand on McClendon to reopen the easement previously granted to Oswald for the purpose of re-gaining access between Tracts 2 and 3.

Jentsch later determined that Lake Road Welding had purchased the last of Oswald's parcels surrounding Tract 3 and filed suit against Lake Road Welding seeking a declaratory judgment and an easement by necessity. During trial, Jentsch testified that after Lake Road Welding had made its land purchases from Oswald, Tract 3 could not be accessed without trespassing on another's land, and was without any road access except through Lake Road Welding's parcels. Jentsch testified that Lake Road Welding's attorney had advised that in order to develop Tract 3, local regulations dictated that Jentsch would need a 60-foot easement. Jentsch twice testified that he knew Tract 3 was landlocked at the time he purchased it, and upon further inquiry by the trial court, Jentsch explained that despite knowing that Tract 3 was landlocked, he understood that "there was the right of an easement however I needed to get that."

At trial, Don Morgan testified that the McClendon easement had allowed Oswald to travel from Tract 3 to Tract 2, and had nothing to do with gaining access to State Highway 79. Morgan informed the trial court that he was familiar with Oswald's use of the easement to access Tracts 1 and 2, and stated that no one ever traveled from Tract 3 over Lake Road Welding's property to reach Tract 2. He asked the trial court to reject Jentsch's request to grant an easement across Lake Road Welding's property.

4

The trial court subsequently denied Jentsch's request for an easement by necessity across the Lake Road Welding property. In its findings of fact and conclusions of law, the trial court found "[t]he subject tract was landlocked when it was purchased" and remains landlocked, and that "[t]here are multiple tracts which border on the east and west side of the subject tract which also border on a roadway." The trial court concluded that Jentsch is not entitled to an easement over Lake Road Welding's property.

## DISCUSSION

Jentsch raises four issues for our review. In Issue One, Jentsch alleges the trial court erred in holding that he was not entitled to an easement by necessity after it found that Tract 3 "was, is, and will remain landlocked."

### Standard of Review

Whether a party is entitled to an easement by necessity is a question of law which we review *de novo*. *Benedictine Sisters of the Good Shepherd v. Ellison*, 956 S.W.2d 629, 631 (Tex. App.—San Antonio 1997, pet. denied)(citations omitted). We will reverse a trial court's conclusion of law if it is erroneous as a matter of law. *Id.*

### Analysis

The jurisprudence regarding access to landlocked parcels spans many decades. In 1944, the Texas Supreme Court observed, "It is well settled that where there is conveyed a tract of land which is surrounded by the grantor's land, or by his and that of third persons, and to which the grantee can only have access to or egress from through lands other than that conveyed, the grantee has a right of way by necessity over the remaining lands of the grantor." *Bains v. Parker*, 143 Tex. 57, 61, 182 S.W.2d 397, 399 (1944). The Court similarly noted that earlier case law had

5

established that "where a vendor retains a tract of land which is surrounded partly by the tract conveyed and partly by the lands of a stranger there is an implied reservation of a right of way by necessity over the land conveyed, where grantor has no other way out." *Bains*, 182 S.W.2d at 399, *citing Alley v. Carleton*, 29 Tex. 74, 78 (1867).

In *Hamrick v. Ward*, No. 12-0348, 2014 WL 4745575, at *3 (Tex. Aug. 29, 2014, pet. filed), the Texas Supreme Court reiterated its 1867 determination in *Alley v. Carleton,* 29 Tex. 74, 78 (1867), that a necessity easement results when a grantor, in conveying or retaining a parcel of land, fails to expressly provide for a means of accessing the land. *Hamrick*, 2014 WL 4745575, at *4. There the Court clarified that a party claiming a roadway easement to a landlocked, previously unified parcel must pursue a necessity easement theory. *Id.*

*Hamrick* relies in part on the court's opinion in *Koonce v. Brite Estate*, which echoed the holdings in *Bains* and *Alley,* and again recognized, "Texas case law establishes that when a grantor conveys part of a tract of land while retaining the remaining acreage for himself there is an implied reservation of a right of way by necessity over the land conveyed, when no other access exists." *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984), *citing Bains*, 182 S.W.2d at 399, *citing Alley*, 29 Tex. at 78. *Hamrick* reiterated that a party claiming a necessity easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity and not a mere convenience; and (3) the necessity existed at the time the two estates were severed. *Hamrick*, 2014 WL 4745575, at *4 (a party seeking a necessity easement must prove both a historical necessity (that the way was necessary at the time of severance) and a continuing, present necessity for the way in question), *citing Koonce,* 663 S.W.2d at 452. An easement by necessity endures until the necessity terminates. *Hamrick*,

6

2014 WL 4745575, at *4 (citation omitted).

The evidence clearly shows that Lake Road Welding tracts and Jentsch's Tract 3 were once unified parcels belonging to Oswald. Therefore, Jentsch has established the first element showing that unity of ownership of the dominant and servient estates existed prior to severance. *Koonce,* 663 S.W.2d at 452.

The trial court admitted into evidence a map depicting Tract 3 and the surrounding parcels that had previously been part of Oswald's unified parcel. The map shows Tract 3 to be landlocked with no access to any road or highway. The trial court's finding that Tract 3 was landlocked when Jentsch purchased it and remains landlocked, is supported by evidence in the record. The trial court correctly found that Lake Road Welding "owns the last tract conveyed from the larger tract with access to a roadway." Jentsch testified that after Lake Road Welding had purchased those parcels, no roads provided access to Tract 3 and he had no way of accessing Tract 3 without trespassing on someone else's property. The evidence shows that no legal means of accessing Tract 3 existed at the time Tract 3 and the Lake Road Welding parcels were severed. We conclude Jentsch has satisfied the second and third *Koonce* elements, that the easement he seeks is not a mere convenience but one of necessity, and that the necessity for the requested easement existed at the time the two estates were severed. *Hamrick*, 2014 WL 4745575, at *4, *citing Koonce,* 663 S.W.2d at 452.

The existence of the McClendon easement does not adversely affect this analysis. After Oswald conveyed his last two road-front parcels to Lake Road Welding in 2004, no manner of ingress or egress to Oswald's Tract 3 existed, other than McClendon's grant of a temporary "easement" to Oswald, which existed only as long as Oswald owned Tract 3. The McClendon

7

easement agreement was executed approximately one month before Oswald sold his last two road-frontage parcels to Lake Road Welding. Oswald continued to have access to Tract 3 through his parcels fronting Highway 79 after executing the McClendon easement agreement. Thus, the McClendon easement agreement granted Oswald a mere convenient means of ingress and egress to Tract 3, which expired when Oswald, or his estate, no longer owned Tract 3. *See also Bains*, 182 S.W.2d at 399 (a mere license to use a way across the land of any surrounding landowners does not operate "to negative the existence of a way of necessity over [a grantee's] land").

Consequently, as Jentsch has satisfied the three *Koonce* elements, the trial court's conclusion of law that Jentsch "is not entitled to an easement over [Lake Road Welding's] tract" is erroneous as a matter of law. *Benedictine Sisters of the Good Shepherd*, 956 S.W.2d at 631. Issue One is sustained.

In Issue Two, Jentsch asks whether McClendon's granting of "a temporary personal ingress/egress license (denoted an 'easement') to [Oswald] compel[s] a holding that [Tract 3] should remain landlocked[.]" In Issue Three, Jentsch complains that the trial court should have either designated the location of the requested easement or provided for its determination. As the trial court did not designate nor provide for the designation of easement location and parameters, Jentsch contends we should make such determinations. In Issue Four, Jentsch contends the trial court erred in failing to award attorney's fees. He asserts that he is entitled to recover his attorney's fees for the trial and appeal of this action. Because we have sustained Issue One, we need not address Issues Two, Three, and Four.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for further proceedings.

YVONNE T. RODRIGUEZ, Justice

November 19, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

9