## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 17-40369

—————

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2018

Lyle W. Cayce
Clerk

KEITH REDBURN,

Plaintiff - Appellant

v.

CITY OF VICTORIA,

Defendant - Appellee

—————

Appeal from the United States District Court
for the Southern District of Texas

—————

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

This case involves a dispute between Keith Redburn and the City of Victoria, Texas, over the City's use of Redburn's residential property to drain and filter storm-sewer runoff from a large part of the City. It is undisputed that the drainage from the City's system has created a deep chasm across Redburn's property that detracts from its value and utility. Redburn's property was outside the city limits when the drainage started, but was later annexed by the City.

Redburn initially filed this lawsuit in state court, seeking to stop the damage to his property and, after he amended his state court petition to add a federal takings claim, the City removed the case to federal court. The federal

No. 17-40369

district court granted summary judgment in favor of the City, holding that it had an implied drainage easement by estoppel and no duty to accommodate Redburn's use of his own property, and, alternatively, that Redburn could not show that the City had exceeded the scope of its easement.  Redburn appeals from that judgment, arguing that (1) the City does not have an easement and he is entitled to a declaratory judgment and monetary damages; and (2) even if the City has an easement, it must accommodate Redburn's use of his property by installing subsurface drain pipes as it has done elsewhere in the City; and (3) regardless, the City's current use of Redburn's land amounts to a physical taking, entitling him to compensation under the Fifth and Fourteenth Amendments.  Finding that disputed factual issues exist to preclude summary judgment with regard to the first two issues, we VACATE the district court's summary judgment order and REMAND for further proceedings.  We conclude that Redburn's Fifth Amendment takings claim is time-barred and AFFIRM as to that claim.

**I**

Beginning in the late 1800s, the City of Victoria, Texas, cut a shallow, open ditch along a street to drain storm water and sewage from the City.  That excavation became known as the Phillips Ditch, so named for a resident who succeeded in a lawsuit against the City to have the ditch declared a nuisance and eliminated by the installation of underground storm sewer drainage.  Initially, the City extended the drainage line westward towards the Guadalupe River, ending at the city limits abutting the property of D.H. Braman, Redburn's predecessor in interest.[1]  Eventually, however, Braman's property

---

[1] The parties appear to dispute whether the ditch followed the course of a natural waterway.  Redburn contends that the City's pipe system diverted water uphill to his property, instead of dispersing it naturally at a lower elevation.  By contrast, the City

was annexed as the City grew and extended its storm-sewer drainage system westward toward the river. By 1932, the City had moved all of its storm-sewer system underground by installing a subterranean network of sixty-inch concrete pipes. However, for unclear reasons that are subject to dispute, the City did not lay drainage pipes across the Braman property; instead, it continued to rely on an open ditch thereon to carry storm-sewer runoff across the Braman property and back into the City's underground pipe system on the other side. The City also, at some point in time, installed concrete discharge and intake culverts, located partially on the eastern and western edges of Braman's property, to aid the flow of the drainage.

In 1939, Braman executed a quitclaim deed, transferring a 0.11-acre triangular tract of land in the northeastern corner of his property to the City for one dollar. In 1941, Braman purchased a tract of land extending north of the ditch, giving him the entire five-and-a-half-acre plot of land owned by Redburn today. With this purchase, Braman's land was split into two segments by the ditch. That same year, Braman wrote a letter to the City requesting permission to erect a fence along his property lines, including over the ditch, to enclose his entire property. The City granted his request.

In May 2004, Keith Redburn purchased the property from the Braman family. The City's drainage system, and the open ditch on Braman's land, existed at the time of the purchase and remains in place today. Storm-sewer flow is carried to Redburn's property from a drainage field of over 122 acres, consisting of dozens of city blocks. Although the entirety of the City's storm-sewer system was once above ground, Redburn's property is currently the only private property on which the storm sewer flows uncontrolled and aboveground

---

contends that the Phillips Ditch follows a natural flow of water that extended over the property on its way to the river.

on its way to the river.  The parties dispute the effects of the drainage system on the land.  Redburn contends that the drainage system has resulted in erosion, uprooting trees and creating a canyon in his backyard that is fourteen feet deep and sixty to seventy feet wide.  He also claims that the storm-sewer flow washes assorted debris and trash onto his property, including plastic bottles, baby diapers, disposable cups, menstrual products, and hypodermic needles.  In addition to the unsanitary refuse, Redburn contends that the drainage has created various safety and health hazards by creating risks of drownings and serving as a hospitable environment for snakes, insects, vermin, and poison ivy.  The City claims that it has done nothing to alter the storm-sewer system since the 1930s, has not acted upon Redburn's property since it approved the fence in 1941, and has done nothing to increase water flow since 2000.

Beginning in 2006, Redburn sent several letters to the City, claiming that the storm-sewer flow was destroying his property.  Receiving no response, he plugged the drain pipe entering his property with concrete in 2011.  That same year, Redburn sued the city manager and director of public works in state court, seeking a declaratory judgment and injunction against the City's use of his land.  The City intervened and cross-claimed, seeking to remove the concrete plug and affirm that it had an easement to drain water across Redburn's land.  Redburn was ultimately ordered to remove the concrete plug, and the state court dismissed most of his claims, leaving only the issue of whether the City had an easement over his land.  Redburn filed a second amended petition adding a federal takings claim under 42 U.S.C. § 1983.  The City then removed this case to federal court.

The federal district court granted in part and denied in part the City's July 2015 motion for partial summary judgment, enjoining Redburn from

No. 17-40369

blocking the culvert, but ruling that the City could not penalize Redburn for the previous blockage. Redburn then moved for partial summary judgment, seeking, inter alia, a declaration that the City did not have an easement to drain across his property; or, alternatively, that the City must reasonably accommodate his use of the property or pay compensation for taking it.  In a brief opinion, the district court granted summary judgment in favor of the City, concluding that the City had an easement by estoppel to drain across Redburn's property and had no duty to accommodate Redburn's use of his property, and that the city had not taken Redburn's property by exceeding the scope of its easement.  Redburn timely appealed.

## II

We review a district court's "grant of a motion for summary judgment de novo, applying the same standard as the district court." *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists when, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## III

The City argues that it has an easement to drain across Redburn's land by estoppel, and an implied easement to drain by prior use and necessity.[2]  We

---

[2] The City does not allege or contend that it has an express easement by written instrument, or that Braman dedicated a portion of his land to the City for public drainage purposes. *See, e.g., Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203–07 (Tex. 1962).

5

conclude, however, that the City has failed to show that it acquired any such easement and that the district court erred in granting summary judgment for the city on this basis.

## A

Under Texas law, an easement by estoppel requires a representation made by the promisor to the promisee, communicated by words or actions, that the promisee believed and relied on to his detriment. *See Martin v. Cockrell*, 335 S.W.3d 229, 237 (Tex. App. 2010) (citing *Storms v. Tuck,* 579 S.W.2d 447, 452 (Tex. 1979)). All elements must exist "at the time the promise creating the alleged easement was made." *Shipp v. Stoker*, 923 S.W.2d 100, 102 (Tex. App. 1996). An easement by estoppel binds successors if the promisee continues to rely on the easement. *Martin*, 335 S.W.3d at 237–38.

The federal district court's summary judgment order holds that the City has an implied drainage easement by estoppel, basing its conclusion on a letter written in 1941 by D.H. Braman, a previous owner of Redburn's land. In the letter, Braman asked the City to allow him to lay tiling and erect a fence over the ditch and along the perimeter of his property to encompass his newly acquired land. Braman's letter further stated that he would "assume risk as to damage caused to my property by rason [sic] thereof." The district court concluded that Braman's letter amounted to a representation that the City had a right to use the ditch for drainage purposes, that Braman assumed the risk of any damage caused by the City's drainage and water flow to his property, and that the City relied on Braman's representations to its detriment when it allowed him to erect the fence.

Redburn offers a different interpretation of the letter. He contends that Braman's request for permission to erect a fence amounted to mere acknowledgement that the City owned the storm-sewer pipes—not that the

City had a right to drain over his property or to cause the massive erosion of his land. Redburn further contends that Braman assumed the risk of any damage resulting from placement of a fence over the storm-sewer pipes and along his property lines abutting the City's streets—not for the erosion of his property by the City's storm-sewer flow. And, based on his interpretation of the letter, Redburn disputes that the City relied on the letter to its detriment.

Braman's letter is ambiguous in many respects. It is not clear what representations the letter makes by asking permission from the City to build a fence. Nor is it clear that Braman intended to assume the risk of damage to his property caused by the storm-sewer flow, or that this assumption of risk represented an implied drainage right. Regardless of these ambiguities, the City has not demonstrated that it relied on the letter's representations to its detriment, citing no harm because of, or after, its initial decision to allow Braman to erect the fence. Accordingly, the district court erred in granting summary judgment on the basis that the City has an easement by estoppel. Construing the facts and evidence in the light most favorable to Redburn, the nonmovant, the City has not shown that there is no genuine dispute of material fact or that it is entitled to judgment as a matter of law.

**B**

The City alternatively claims that it has an implied easement. "Under Texas law, implied easements fall within two broad categories: necessity easements and prior use easements." *Hamrick v. Ward*, 446 S.W.3d 377, 381 (Tex. 2014).

**1**

"To successfully assert a necessity easement, the party claiming the easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity

and not a mere convenience; and (3) the necessity existed at the time the two estates were severed." *Id.* at 382. An easement by necessity arises where there is no other right of way or access to the dominant estate; for example, when the dominant estate is landlocked. *See Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984). This doctrine requires proof that access to a public road is necessary. *See Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 549 (Tex. 2016); *Hamrick*, 446 S.W.3d at 382 (stating that "the balance of [the court's] jurisprudence on necessity easements focuses on roadway access to landlocked, previously unified parcels"). Because the City does not seek access to a public road, it clearly is not entitled to a summary judgment declaring that it has an easement by necessity over Redburn's property.

**2**

To establish an easement by prior use, Texas law requires that the party claiming the easement must prove "(1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the use of the claimed easement was open and apparent at the time of severance; (3) the use was continuous, so the parties must have intended that its use pass by grant; and (4) the use must be necessary to the use of the dominant estate." *Hamrick*, 446 S.W.3d at 383 (citing *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207–08 (Tex. 1962).

The City contends that it has an easement over Redburn's property to drain storm-sewer runoff from the municipality because, when Braman quitclaimed the small 0.11-acre parcel to the City for one dollar in 1939, he thereby severed the small parcel from his 5.5-acre tract, and the 0.11-acre parcel was at that time being drained by the ditch across the Braman property. Thus, the City contends, Braman thereby granted it an easement by prior use to drain water from the small parcel into the ditch across his property.

The City's argument is meritless for several reasons. First, even if such prior use existed, the City's acquisition would give it the right to drain only the 0.11-acre parcel, not the entirety of the 122-acre field that it has used the ditch across the Braman property to drain. Second, it is a highly disputed issue of fact whether, at the time of the quitclaim, waters from the small parcel naturally drained into the ditch. Finally, the quitclaim deed by which Braman transferred his interest in the 0.11-parcel to the City clearly does not grant an easement.

Moreover, Redburn introduced plats and circumstantial evidence that tend more strongly to show that the purpose of the parties in executing the quitclaim deed was to grant the City the small but essential parcel it needed to complete North Street, which abutted Braman's land. The deed's lack of mention of drainage shows, at the very least, that there is a genuine factual dispute regarding whether it had anything to do with the ditch or the storm-sewer runoff. Also, we note that the metes-and-bounds description of the quitclaim deed itself refers to the parcel as "an undedicated portion of North Street between Smith Street and West Street" in the Town of Victoria, Texas. Thus, the evidence demonstrates that the small strip was likely granted to the City for the purpose of finishing North Street.

"The basis of the doctrine [of prior use easements] is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (Tex. 1952). Here, the City has not demonstrated that it is entitled to summary judgment on the basis of an easement by prior use because the evidence strongly indicates the quitclaim parties did not have drainage in mind. To read such an anomalous provision into their instrument, absent more evidence,

would risk defeating the parties' intent rather than reading in what the circumstances show they must have intended. *See Id.* Accordingly, the City has not demonstrated that it is entitled to summary judgment on the basis of its easement-by-prior-use claim.

# IV

Upon remand, if the City is unable to demonstrate at trial that it has an easement to drain storm sewer runoff across Redburn's property, Redburn will be entitled to seek and offer proof for a declaratory judgment and monetary damages. Alternatively, even if the City succeeds in proving it has such an easement, Redburn contends that the City has abused and unreasonably exercised that easement so as to severely damage Redburn's property; and that, therefore, the City must be required to extend, connect, and bury the City's pipes that discharge storm-sewer runoff on to his property, so that the City's drainage and sewage will traverse his property underground in a less destructive and safer way. He argues that the City has employed this reasonable alternative method of storm-sewer drainage elsewhere throughout the municipality and should be required to do so under the surface of the Redburn property as well.

The district court concluded that the specialized "accommodation doctrine" developed by the Supreme Court of Texas to resolve disputes between competing owners of surface and subsurface mineral and water estates does not apply to easements.[3] However, although Redburn occasionally refers to

---

[3] Where there are disputes between the owners of surface estates and severed mineral estates, particularly in the context of oil and gas leases and, more recently, groundwater disputes, Texas courts have traditionally employed the accommodation doctrine. *See Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 63 (Tex. 2016) (extending the accommodation doctrine to groundwater disputes based on a finding that there are "similarities between mineral and groundwater estates" and between "their conflicts with surface estates"); *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 622 (Tex. 1971).. The accommodation doctrine holds, in essence, that where a surface owner's existing use of his

the alternative relief he seeks as an "accommodation" to enable him to enjoy the use of his property, we conclude that his claim is based on basic principles of Texas property law and that he is not requesting that we invoke the accommodation doctrine. Indeed, Redburn expressly states that an extension of the accommodation doctrine is not necessary here; he argues instead that the remedy he seeks, of requiring the City to extend and bury its drainage pipes under his property, arises from state law principles of "reasonable use" that preceded but ultimately gave rise to the doctrine in the oil and gas context. We agree.

The Supreme Court of Texas has described the basic principles of private property rights "as fundamental, natural, inherent, inalienable, not derived from the legislature and as pre-existing even constitutions." *See Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012) (quoting *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex. 1977)). These constitutional protections must underlie a court's analysis in determining "the scope of the property rights at issue." *Id.*

"Generally, an owner of realty has the right to exclude all others from use of the property, one of the 'most essential sticks in the bundle of rights that are commonly characterized as property.'" *Id.* (quoting *Dolan v. City of Tigard,* 512 U.S. 374, 384, 393 (1994)); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435–36 (1982) (the right to exclude is "one of the most treasured strands in an owner's bundle of property rights," and "an owner suffers a special kind of injury when a *stranger* directly invades and occupies the owner's property"). Property rights may be limited in a number of ways,

---

land is precluded or impaired by the actions of a subsurface lessee, and where there are established industry alternatives available to the lessee to recover the minerals, reasonable usage rules may require the lessee to adopt an alternative method to permit the servient-estate owner to continue his preexisting use of his land. *See Getty Oil Co.*, 470 S.W.2d at 622.

however, including by consent of the owner, condemnation proceedings resulting in payment of just compensation, the exercise of government police power, easements, or longstanding pre-existing limitations in the rights of real property owners. *Severance*, 370 S.W.3d at 710.

Easements exist to benefit their holders for a specific purpose; they do not divest an owner of title, but allow another to use the property for a specific purpose. *Id.* at 721 (citing *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)). "The existence of an easement 'in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner.'" *Id.* (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)). "Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement." *Id.* at 721 (citing *Drye*, 364 S.W.2d at 207; *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987)). In other words, Texas law firmly establishes that an easement holder has the right to use the servient estate for the purposes of the easement, but in a manner that does not cause unreasonable damage to the servient owner's property. *Id.* at 721.

Redburn has presented evidence that the City's use of his property may not be "as little burdensome as possible" because the City's storm-sewer system has caused extensive damage to his property through erosion and pollution. *See id.* Accordingly, if the City can demonstrate that it has an easement on remand, the district court must consider whether the City's use of Redburn's property comports with Texas state law principles of "reasonable use" and the

obligation of easement holders to minimize the burden on the servient property.[4]

## V

Redburn also contends that the effects of the City's storm-sewer system on his land amounts to a physical taking under the Fifth Amendment, entitling him to compensation. The Fifth Amendment prohibits the government from taking private property "without just compensation." U.S. CONST. amend. V; *see also Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 176 n.1 (1985) (the Fifth Amendment applies to the states through the Fourteenth Amendment (citing *Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 241 (1897))). The permanent "physical occupation of real property" by the government is a taking. *Loretto*, 458 U.S. at 426–27. A physical taking may occur "where real estate is actually invaded by superinduced additions of water, earth, sand, or other material . . . so as to effectually destroy or impair its usefulness," *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. 166, 181 (1871), or where continuous flooding by the government causes erosion, *United States v. Dickinson*, 331 U.S. 745, 750–51 (1947).

---

[4] The City contends that it is prohibited by the Texas Constitution from spending taxpayer money to "improve" Redburn's property by extending and burying the pipes. The City points specifically to article III, section 52(a), which states, in relevant part: "[T]he Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . ." Tex. Const. art. III, § 52. The argument is premature because no one has challenged an action of the state legislature or a political subdivision as a prohibited grant of public money to an individual, association, or corporation. Further, the Supreme Court of Texas has construed article III, section 52(a) as prohibiting only "gratuitous" payments of money to individuals, associations, or corporations. *See Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 383–84 (Tex. 2002); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). This case does not involve gratuitous payments of public money.

The City contends, however, that Redburn's federal takings claim is time-barred.  We agree.  Courts considering claims brought under § 1983 must borrow the relevant state's statute of limitations for personal injury actions.  *See Wilson v. Garcia*, 471 U.S. 261, 271 (1985).  In Texas, the applicable limitations period is two years.  *See Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998) (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a)).  Federal law governs when a cause of action under § 1983 accrues.  *Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995).  The limitations period begins to run when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."  *Id.* at 516 (internal quotations omitted).

Redburn purchased the property from the Braman family in 2004.  The record demonstrates that he wrote to the City complaining about the storm-sewer system's effects on his property as early as 2006.  Thus, at the latest, Texas's two-year limitations period began to run in 2006 and expired in 2008.  Redburn did not commence this action until 2011, however, and his federal takings claim is therefore time-barred.  Accordingly, we affirm the district court's order of summary judgment with respect to this federal claim.

Because the only federal-law claim in this case allowing its removal to federal court has been eliminated as time-barred, the district court has discretion to remand to state court if it determines that it would be inappropriate to retain jurisdiction.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." (citing *Mine Workers v. Gibbs,* 383 U.S. 715, 726–27 (1966))).

No. 17-40369

**\*\*\***

For these reasons, we AFFIRM the district court's judgment dismissing Redburn's Fifth Amendment takings claim. We otherwise VACATE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.