## AMERICAN SURETY CO. v. FIELDER.
### No. 788.

Court of Civil Appeals of Texas. Eastland.
Feb. 13, 1931.

Rehearing Denied March 27, 1931.

Davidson, Doss & McMahon, of Abilene, for appellant.

Stinson, Hair, Brooks & Duke, of Abilene, for appellee.

HICKMAN, C. J.

A Ford coupé was stolen from appellee in Abilene, Tex., and taken to the state of Florida, where it was sold to one John P. Cox. Appellee located the car in the possession of Cox, and brought suit in the circuit court of Santa Rosa county, Fla., in the nature of a replevin against Cox to recover it. In connection with his suit, he executed a replevin bond in the principal sum of $1,000, with appellant as surety. The case was tried in the Florida court in the absence of appellee, and a judgment was rendered therein in favor of Cox and against appellee and his surety, the appellant, for the sum of $525, besides costs amounting to $15.62. The instant suit was instituted by appellant against appellee for reimbursement; it being alleged that appellant had paid off the judgment rendered in Florida. Appellant also sought attorneys' fees in the sum of $100, alleged to have been incurred as a direct result of its suretyship. Various special defenses were interposed by the appellee. We find it unnecessary to consider these defenses, for the reason that the only question before us is the alleged error of the trial court in overruling the motion of appellant for a peremptory instruction. The cause was submitted to the jury on special issues embodying two of the defenses pleaded by appellee, which issues were answered in appellee's favor.

Appellant's brief contains eleven propositions, each assigning a different reason why it is claimed the peremptory instruction requested by it should have been given. We have concluded that the court did not err in overruling the motion for a peremptory instruction. The only evidence in the record that appellant ever paid off and discharged

the judgment is an assignment of the judgment to it by the plaintiff, Cox. This assignment does not disclose what amount was paid by appellant in satisfaction of the judgment. It is a well-settled rule of law that a surety will not be allowed to speculate on his principal, but is entitled to recover against him only the amount or value which he (the surety) has actually paid. In the absence of any proof of this fact, appellant was not entitled to a peremptory instruction in its favor. 50 C. J. p. 274, § 457; 21 R. C. L. p. 1100, § 136; Id. p. 1124, § 161; Price v. Horton, 4 Tex. Civ. App. 526, 23 S. W. 501.

Our views on this question render it unnecessary for us to consider and determine whether there exist other reasons why the motion should not have been granted. The judgment of the trial court will be affirmed.

### On Rehearing.

In its motion for rehearing appellant cites the case of Reynolds v. Skelton, 2 Tex. 516, as authority for the contention that the possession by it of an assignment of the judgment was prima facie proof that it had paid the amount of the same. We find that this same authority was cited in a reply brief filed herein before the case was submitted, but we did not discover this reply brief among the papers of the case, and did not read same in our original consideration of the case. Our failure to do so is not chargeable to appellant's attorneys. As noted in the original opinion, appellant offered in evidence a certified copy of the judgment and an assignment thereof to it by the judgment creditor. The judgment on its face discloses the amount of the recovery, and also the amount of the costs. The case above cited is authority for the conclusion that the assignment was sufficient evidence of the payment by appellant of the full amount of the judgment. There was no rebutting evidence to the contrary, and it was not therefore necessary for appellant to offer any further proof on the issue. See, also, 50 C. J. p. 271.

Having sustained this contention of appellant, it becomes necessary for us to consider appellee's defense. The case was submitted to a jury on two issues, and the nature of the defense urged is disclosed by the issues submitted, which were as follows:

"Question No. 1: Did the Agent of the American Surety Co. at Milton, Florida, make, or acquiesce in the statements to defendant, O. B. Fielder, if any such statements were made, that the controversy over the Ford Coupe was settled and that he could take the car and come on home as that was the last of the controversy? Answer 'Yes' or 'No.'

"If you have answered Question No. 1 'Yes,' then you will answer this question.

"Question No. 2: Did the defendant Fielder rely on such statements or acquiescence, if any were made, by said Agent, to the extent that he would not have come on home and acted as he did had it not been for such statements or actions on the part of said Agent of the Surety Company? Answer 'Yes' or 'No.' "

Each of these issues was answered in the affirmative, and upon this verdict judgment was rendered for appellee. Upon a consideration of the record, we have concluded that there was no evidence supporting any defense for appellee and that the motion for peremptory instruction should have been granted. The evidence would seem to present a case of negligence against appellee's attorney Wiggins, whom he employed in Florida to represent him in the litigation, but, since that attorney is not a party to this suit, and his side of the controversy has not been developed, we shall not convict him of negligence in this opinion.

As completely exonerating the appellant from any fraud or neglect of any duty it owed to appellee, we quote the following pertinent testimony given by the appellee himself, which was the only testimony in the record as to these facts:

"After I got to Florida I found the car in the possession of a man whose name, they told me, was John P. Cox. If I am allowed to tell what he said—he refused to give it up, he wouldn't turn it over to me, he says 'if it's your car you should have it' but—no, he was not at Milton, he was at his home about ten miles from town.

"I did afterward have a conversation with the agent of the plaintiff, American Surety Company of New York. We went to him to make that bond. They wouldn't turn the car over to us, we were at outs what to do. The attorney we got said we would have to make a replevy bond. I said I couldn't make a replevy bond there, I didn't know anybody there, so he suggested that I go over and talk to this bonding company. I went over there and had a talk with the agent of the bonding company, he didn't much want to make the bond but we explained to him that it would only be a period of three days before we could have a trial, the bond would run three days, and so he made the bond and I paid him for making it. I paid him $15.00 for the bond. After that, the deputy sheriff went with us, and he got into the car and came back to town with Mr. Cox. Then the sheriff kept the car after that under lock and key.

"At the end of the three days' time I was there at Milton, Florida, ready for trial. I was anxious to get a trial and anxious to get away.

"We talked to the agent that made the bond with reference to getting possession of the car. After that they turned the car over to me and I went to the agent and told him they had turned the car over to me and that they told me the thing was all settled. I

went to him and told him that the sheriff had let me have possession of the car. The car was turned over to me by the sheriff. The agent was very pleasant about it, he wished me well and said he was glad I was on my way and if I was ever again in Florida to come back to see him; everything was all right with him. Sure, I relied on what he stated to me, they had my car and I couldn't get it until they turned it over to me.

"I made that bond on or about May Seventh; I left for Abilene on the evening of May Tenth. * * *

"I showed the agent of the Bonding Company the bill of sale and registration numbers in proof of my claim to the car; I left them there with the Court. I relied upon the statement of the sheriff and the attorney and the bonding company that I would not have to be there further and could go home. I went into the agent of the bonding company's office and told him they had turned me over the car and asked him if it was all right and he said Yes, sir, everything was all right. I had agreed with him that I would not leave without seeing him. No, sir, the sheriff did not go with me to the office of the agent of the bonding company at that time. Yes, I had agreed that I wouldn't go away and leave him the sack to hold for those three days, that was all of the time the bond was made for. The trial was set down for three days after the bond was made; trial was set down on the third day. Yes, I was there when the trial was called. I do not know of any other person I could have gone to for information that I could go home, no one else was involved."

Upon cross-examination he testified:

"It seems I did start a suit in Florida, I had it started. I did have an attorney, J. T. Wiggins. I paid him a fee of $35.00 and was to pay him more when he got the car. Yes, he was there when the car was turned over to me. The Sheriff was also there when the car was turned over to me. I went to the agent of the American Surety Company as I had agreed to. The authorities told me the case was over; I asked him if everything was all right and he said it was. No, I didn't know better than that, I did not know that the case was not over.

"I did authorize Stinson, Hair, Brooks and Duke to write a letter to J. T. Wiggins. In that letter they do state that Mr. Wiggins did not take depositions of any witnesses here, and that you could not understand why Mr. Wiggins did not develop my side of the case. The depositions to be taken were of men that knew about the ownership of the car. We found out later that the case was not over but when we left there we supposed it was. I told Mr. Wiggins I would furnish him all the references he wanted. No, I did not expect him to take any more evidence. No, we did not have any understanding about

it, they told me that the case would be thrown out and it was over. I did rely upon the sheriff and the bonding company's agent. The sheriff had possession of the car. It is hard to explain it all, the way we talked, we had all been together, Mr. Cox's attorney and this bonding man and the sheriff, and when it was agreed that we would not try the case and it was disposed of it was all in the presence of the bonding company's agent and a part of it was in his office. No, the bonding company's agent was not there when the car was turned back to me. I took that information to the bonding company's office and told him what they had told me. I told him I was going on home. I have not been back to Florida since that time. I do not know whether or not my attorney appeared in this case. I do not know whether this agent Thompson still lives in Milton, Florida. I do not know whether or not the company may have appointed a new agent at the time this case was called."

In addition to this he offered in evidence a letter written by his Abilene attorneys to his Florida attorney, as follows:

"October 19, 1926.

"Mr. J. T. Wiggins, Milton, Florida.

"Dear Sir: Mr. O. B. Fielder has received letter by registered mail from the American Surety Company, at its Atlanta, Georgia office under date of October 16th, advising that John Cox had recovered judgment against him for $525.00, with $15.62 cost, at the last term of the Circuit Court of Santa Rosa County, Florida, and demanding that Mr. Fielder send Cashier's Check for $540.62, to cover such judgment.

Mr. Fielder desires to know if judgment has been in fact rendered against him and what steps you would advise for him to take. He says you never took the depositions of any of his witnesses here, and he does not understand why you went to trial without developing his side of the case. Will you kindly advise us?

"Yours truly,

"Stinson, Coombes & Brooks,

"CEC:GG By——————"

And the following letter from the Florida attorney to the Abilene attorneys:

"October 30, 1926.

"Stinson, Coombes & Brooks, Attorneys at law, Abilene, Texas.

"Gentlemen: I have your favor of the 27th inst., in reference to O. B. Fielder vs John Cox, asking me what steps can be taken to re-open this case and procure hearing upon its merits. In reply to same I beg to advise I am frank to say in my opinion there is not a possible chance to have this case re-opened.

"Yours very truly,

"[Signed] J. T. Wiggins."

■ No discussion of this evidence is required. It wholly fails to make out any case

against the appellant. There is not even a showing that appellant knew the case was to be tried. The theory seems to be that appellant owed to appellee the duty to maintain an agency at Milton, Fla., to take charge of the litigation and keep him informed as to the progress thereof. We know of no rule of law imposing such duty upon a surety in a replevin bond. That duty rested on appellee's attorney, Wiggins, or the officers of the court.

 In its petition the appellant prayed for reasonable attorney's fees based upon provisions in the bond and application for bond. The amount of the attorney's fees claimed in the petition was $100. No evidence was offered in support of this allegation and no issue thereon requested. We must therefore construe the record just as if the entire matter of attorney's fees had been waived. Thus construing it, there is no issue to be retried. The case was fully developed. All of the testimony with regard to the facts relied on as a defense was given by the appellee himself. We must presume that, if there were other facts, he would have testified to them.

It is therefore our order that the judgment heretofore rendered be set aside, that the motion for rehearing be granted, and that judgment be here rendered for appellant against appellee for the sum of $540.62, with interest thereon at the rate of 5 per cent. per annum from December 11, 1926, the date said judgment was assigned to appellant, together with all costs in the court below and in this court.