**Willard B. AUBREY, Jr., Appellant,**

v.

**W. O. WORKMAN, Appellee.**

No. 16564.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 6, 1964.

Rehearing Denied Dec. 11, 1964.

Lee & Lee and Jack Lee, Mason, for appellant.

Jacobs & Lipscomb and Ernest May, Fort Worth, for appellee.

LANGDON, Justice.

This is a suit on a promissory note which was originally secured by a second lien on a house in Arlington, Tarrant County, Texas.

By way of defense Aubrey alleged that during May, June and July of 1954, on numerous occasions he discussed his financial and marital difficulties with Workman. That he advised him that he had decided to move into smaller quarters and rent the house he had purchased from Workman which was in the latter's Park Row Addition in which there remained unsold houses. That Workman advised him that a rent house would depreciate the value of the new unsold homes remaining and render them more difficult to sell. That because of the adverse effect a rent house would have on the values of the unsold houses Workman advised Aubrey that if he would turn his house over to him he would assume the first lien thereon and release the second lien which is the subject matter of this suit. That he, Aubrey, having no desire to damage the value of Workman's unsold property and in reliance upon Workman's statements that such actions on his part would satisfy all indebtedness to Workman, accepted the latter's offer and on or about August 1, 1954, moved his belongings out of the house and left it in charge of Workman. That the latter having caused him to rely in good faith on his statements and promises cannot now complain that the note is unpaid.

The pleadings and the testimony of Aubrey reflect that the alleged agreement was pieced together from various chance meetings between Workman and Aubrey covering the months of May, June and July, 1954. According to his testimony there was never a meeting between the two for the specific purpose of working out the terms of an agreement and no single meeting in which all of the terms of the alleged agreement were discussed. There was no promise to make a memorandum.

The case was tried to a jury which found in response to special issues, that, (1) Workman promised to discharge Aubrey's obligation under the second lien note, (2) that Aubrey relied upon such promise, and (3) that but for such reliance Aubrey would have prevented foreclosure of the first lien. (4) The jury further found that Aubrey delivered the house to Workman.

The trial court overruled appellant's motion for judgment and granted appellee's motion for judgment non obstante veredicto. We affirm.

The propriety of the action of the court in entering such judgment is the sole question before this court.

W. O. Workman, plaintiff below and appellee herein, and W. B. Aubrey, Jr., defendant below and appellant herein, will be referred to hereinafter as Workman and Aubrey.

Aubrey purchased a house from Workman in June of 1963. He made a down payment of $1,000 and executed a first lien note payable to J. E. Foster Company and a second lien note in the sum of $5,850 payable to Workman, which note is the basis of this suit.

Aubrey has never executed a deed reconveying the property to Workman in

connection with the alleged oral arrangement although the agreement to be effective would require a re-conveyance.

Aubrey in explaining his delivery of the house to Workman testified that he removed his belongings, moved out of the house and left the key in the door. He did not notify Workman of his move either before or after he abandoned his home.

■ Broadly stated, a conveyance of real estate must be in writing. The basic statute of frauds denies a right to maintain an action on an oral contract for the sale of real estate or the lease thereof for a longer term than one year. 26 Tex.Jur.2d 201, § 39.

■ The statutory phrase "any contract for the sale of real estate" includes every executory agreement that contemplates the alienation of an existing interest in land. The effect of the statute is to render unavailing to the parties, as the ground of a claim, any parol contract, in whatever shape it may be put, by which either of them is to part with real estate. 26 Tex. Jur.2d 220, § 61, and p. 205, § 41; Chandler v. City State Bank in Wellington, 135 S.W. 2d 1013 (Amarillo Civ.App., 1940, no writ hist.).

■ In Hill v. Frost, 59 Tex. 25 (1883), it was held that: "The agreement to take the case out of the statute must not only be in writing, but, like any other promise binding in law, must be founded upon a sufficient consideration moving between the parties."

Article 3995, R.C.S. of Texas, subd. 2, provides that before any person may be charged upon a promise to answer for the debt of another the promise or agreement or some memorandum thereof shall be in writing and signed by the party sought to be charged therewith.

Article 1288, R.C.S. of Texas, forbids any conveyance not declared by an instrument in writing, subscribed to and delivered by the party disposing of the same.

"On the matter of the construction of the provision of the statute of frauds concerning transactions in real estate, it has been observed that the provision is valid, that it is imperative, and that it is emphatic. It is said that its simple requirement that contracts for the transfer of lands be in writing imposes no hardship and that the effect of its relaxation in, what seemed to the courts, hard cases, has produced abuses almost as great as would have its rigorous enforcement by the substitution of a doubtful state of the law for a rule that was plain, certain, and easily capable of observance." 26 Tex.Jur.2d 203, § 40.

■ It is undisputed that Workman did not at any time transfer possession of the second lien note to Aubrey or otherwise by any action on his part indicate that the obligation was discharged by any one of the five (5) methods set forth in Art. 5939, § 119 of the Negotiable Instruments Act.

Renunciation by the holder of the note must be in writing, unless the instrument is delivered up to the person primarily liable thereon. Section 122 of Art. 5939, supra.

The note in question was clear, plain and unambiguous. It was complete and regular upon its face and unconditional. By signing the note Aubrey became liable for the payment thereof.

■ In the case of Hickox v. Hickox, 151 S.W.2d 913 (El Paso Civ.App., 1941, no writ hist.), it was held that "a mere unexecuted intention to cancel a note not based upon a valuable consideration is without legal effect." See also Rowe v. Daugherty, 196 S.W. 240 (Beaumont Civ. App., 1917, no writ hist.).

■ "But when there is a mere promise by the creditor to forbear without any corresponding promise on the part of the debtor not to pay during the period of the promised forbearance, the agreement is without consideration." 9 Tex.Jur.2d, p.

82–83, § 71, "Consideration"; 85 A.L.R. 319 and cited cases.

■ "Between the original parties, a compromise contract that results in the giving of commercial paper must be supported by a legal consideration." 9 Tex.Jur.2d, p. 58, § 46; p. 323, § 294, "Agreements limiting liability"; p. 227, § 206, "Renunciation".

■ The only possible consideration or benefit flowing to Workman under the agreement in question which Aubrey undertook to allege or about which he testified was the protection of the addition from a rent house. Yet there is no evidence that Aubrey ever suggested to Workman that he proposed to rent his house unless released from the note. He did state at one point that had it not been for Workman's proposition he probably would have rented it. In our opinion the promises, if any of Workman, were purely gratuitous and within the statute of frauds. There was no conveyance, no surrender of the note, no delivery of the property.

This brings us to a discussion of the appellant's chief defense, promissory estoppel, a substitute for consideration. The elements of this brand of estoppel are set forth as follows in § 90 of the Restatement of the Law (Contracts): "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

A true application of the doctrine of promissory estoppel consists of three elements which must be alleged and proved to support it, and they are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.

According to various writings on the subject it is not required that the promisor received any benefit or that the detriment of the promisee was requested. The element of detriment is apparently satisfied in any case where the promisor has changed his position for the worse, even though his loss may not be solely pecuniary. Thus, if injustice can be avoided only by enforcement of the promise, it will be enforced. In 20 Tex.Law Review 479, it is stated that Texas Courts have reiterated the general rule that the consideration given must be the consideration requested by the promisor and thus have applied the estoppel theory only to donative promises and refused to do so where there is a request for a bargained-for exchange even though the three elements of promissory estoppel are present.

■ "The doctrine of promissory estoppel has been invoked as means of enforcing contracts otherwise unenforceable as coming within the statute of frauds.

"In applying the principles of promissory estoppel, as represented by Restatement of Contracts § 90, to enforce an oral contract of employment within the Alaska statute of frauds, the court in Alaska Airlines, Inc. v. Stephenson (1954, CA9th) 15 Alaska 272, 217 F.2d 295, stated that § 90, not mentioning promissory estoppel, was addressed not to the statute of frauds but to promissory estoppel as a substitute for consideration, but that when one considered the part Professor Williston took in the formulation of the Restatement and examined § 178, Comment f of the Restatement of Contracts, one had to conclude that there was an intention to carry promissory estoppel into the statute of frauds, if the additional factor of a promise to reduce the contract to writing was present. The court cited Williston on Contracts (1936) § 533a. The above mentioned Comment f of § 178 of the Restatement of Contracts, dealing with the statute of frauds, states as follows: 'f. Though there has been no satisfaction of the Statute, an estoppel may preclude objection on that ground in the same way that objection to the non-existence of other facts essential for the estab-

lishment of a right or a defense may be precluded. A misrepresentation that there has been such satisfaction if substantial action is taken in reliance on the representation, precludes proof by the party who made the representation that it was false; and a promise to make a memorandum, if similarly relied on, may give rise to an effective promissory estoppel if the Statute would otherwise operate to defraud.'" 48 A.L.R.2d 1079.

█ The Revised Edition of Williston on Contracts, pp. 503, 504, § 140, contains the following reference to § 90 of the Restatement of the Law (Contracts): "It is not to be denied that there are numerous cases in which this element of justifiable reliance to one's detriment is held not sufficient to make a gratuitous promise binding. Therefore, Section 90 does not assert a sweeping rule that in every case action in reliance is sufficient support for a promise. In the first place, it is only where the action induced is definite and substantial that any legal consequences follow from the gratuitous promise. In the second place such an action should reasonably have been expected by the promisor. Under these words it will not be enough that some action of the promisee, even of substantial character, has been induced by the promise. A promise of one thousand dollars with which to buy a motor car may thus be binding if it induces the purchase of the car. A promise of one thousand dollars for no specified purpose will not be binding, though it induces similar action. If the promisee is helpless to do otherwise, he has not acted or foreborne in reliance on the promise within this doctrine.

"Finally, the words are added at the end of the Section for greater caution, 'if injustice can be avoided only by enforcement of the promise.' With these qualifications it is believed that the provisions of Section 90 do not go beyond existing law, in many jurisdictions at least, and that the section is a useful coordination of the classes of cases enumerated in the preceding section."

Appellant cited several cases on the point of promissory estoppel. Three applied the doctrine. They are: Longbotham v. Ley, 47 S.W.2d 1109 (Galveston Civ. App., 1932, writ ref.); Rancher v. Franks, 269 S.W.2d 926 (Fort Worth Civ.App., 1954, no writ hist.); Richards v. Frick-Reid Supply Corp., 160 S.W.2d 282 (Fort Worth Civ.App., 1942, ref. w.o.m.). Each of these cases involved temporary forbearance of a debt rather than the cancellation thereof.

While the Statute of Frauds may not be used as a device to accomplish a fraud and equity may under some circumstances compel a conveyance or the cancellation of a negotiable instrument, we are unable to find any cases approving such principles in which the promisor failed to receive some requested benefit as a result of his promise. Texas Co. v. Dunn, 219 S.W. 300 (El Paso Civ.App., 1920, writ dism.).

Aubrey was unable to recall whether he paid the installments on the first lien during the months of May, June, July or August, 1954, and he stated that he did not expect Workman to make these payments until after he moved out of the house. When he moved out sometime in August he did not advise Workman of his move. The latter did not know of it for some time. The first lien was foreclosed in September, 1954. The foreclosure was not due to any failure on the part of Workman.

█ Under the rule as announced in Williston, Revised Edition, § 140, supra, Aubrey was not induced to take any action of a definite and substantial nature. There is no pleading or proof that any action taken by Aubrey should reasonably have been expected by Workman. Further, by failing to make the payments on the first lien note Aubrey was helpless to prevent foreclosure and certainly Workman was in no position to do so; thus Aubrey did not act or forbear in reliance on the promise within this doctrine and foreclosure was the very essence of his alleged agreement and understanding with Workman.

There was no issue requested nor submitted as to whether Workman promised to assume the first lien and no objection to the failure to submit was made. The same applies to issues on the foreseeability of reliance by Workman and substantial reliance thereon by Aubrey to his detriment. In so far as the record is concerned, the first lien was foreclosed because of Aubrey's failure to make the payments and not because of any failure to act on the part of Workman. It appears that Aubrey's chief aim is to defeat the second lien note since he makes no real complaint and requests no issues pertaining to foreclosure of the first lien and the loss of his home. The status of Aubrey's payments on the first lien note placed the house beyond control by either him or Workman. Aubrey owed the second lien note before the alleged promise and after the first lien was foreclosed. His position was unchanged. He sustained no detriment because of any promise.

The only promise found by the jury was to discharge Aubrey from his obligation to pay the second lien note. It seems unreal to us that Workman by his alleged promise could reasonably anticipate that release from the second lien would induce Aubrey to vacate his home, leave the key in the door, without notice to anyone and allow foreclosure of the first lien.

Injustice in this case can be avoided only by enforcing the terms of the note.

Aubrey and Workman were the only witnesses in the case. "The case was fully developed. All of the testimony with regard to the facts relied on as a defense was given by the appellee himself. We must presume that, if there were other facts, he would have testified to them." American Surety Co. v. Fielder, 36 S.W.2d 818–821 (Eastland Civ.App., 1931, no writ hist.).

The judgment of the trial court is affirmed.