# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAKE FRONT HARBOUR LIGHTS, LLC,* | § | *APPEAL FROM THE 392ND* |
| *APPELLANT* | | |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ALAN SOLIS AND IVET MOORE SOLIS,* | | |
| *APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Lake Front Harbour Lights, LLC (LFHL) appeals the trial court's declaratory judgment rendered in favor of Appellees Alan Solis and Ivet Moore Solis (collectively the Solises). In one issue, LFHL argues that the trial court erred in rendering a declaratory judgment in which it enlarged the scope of a written easement without evidence of consent by the owner of the servient estate. We reverse and render in part and remand in part.

## BACKGROUND

This case involves a dispute over the use of an easement by two adjoining lots in the Harbour Light Villas, Phase Two development in Henderson County, Texas. Although the two lot designations have varied over time, for ease of reference, we will refer to them as Lots 27 and 28.

On August 22, 2012, LFHL sold Lot 28 to Robert Delp. The special warranty deed by which Lot 28 was conveyed to Delp also created an easement on Lot 27 for the benefit of Lot 28. The easement comprises a ten-foot-wide section of Lot 27, which runs the length of the adjoining property line with Lot 28. The easement sets forth that it is "for the sole purpose of installing and maintaining air-conditioning unit(s) [thereon.]" The easement further states that it runs with

1

and is appurtenant to the property and that "Grantor [owner of Lot 27] shall be able to use the Easement Area for any use that does not interfere with Grantee's [owner of Lot 28] use of the Easement Area for the specified purpose."

Prior to the sale to Delp, LFHL built a house on Lot 28. The structure extends to the adjoining property line with Lot 27; the eaves from the roof extend into the airspace above the easement. Two air conditioning units were installed in the easement area. There also currently is landscaping installed in the easement area toward the front of the house, which obscures the view of the air conditioning units from the street.

On May 29, 2015, LFHL sold Lot 27 to Blayde Choate. Delp sold Lot 28 to Alan and Ivet Solis on August 16, 2016. On December 8, 2017, Alan Solis emailed Don Rowe,[1] asking his permission to construct a dog run on the side of the house adjacent to Lot 27. According to Alan's email, the dog run would consist of a wrought iron fence extending several feet from the house and would run parallel to the structure where it ultimately would connect to the fenced backyard. In response, Rowe sent Alan a text that same day, in which he stated that Alan's plan for the dog run was "approved." The Solises subsequently had the dog run installed. Choate sold Lot 27 to Charles and Maren Constanza on November 7, 2018. The Constanzas conveyed Lot 27 to LFHL on November 21, 2019.

After it reacquired Lot 27, LFHL planned to build a house on the lot. Its construction plans involved extending a driveway toward the rear of the lot, which would extend into the portion of the easement on which the dog run was constructed. The plans further involved placing part of the house on the easement.

On January 3, 2020, LFHL filed a petition for declaratory judgment, in which it requested a declaration that "the easement as granted to [the Solises] . . . is non-exclusive . . . [and] the owner of Lot 27 has the right of access to use the easement as it deems fit so long as it does not interfere with the use described in the easement." The Solises filed a general denial and counter-petition, in which they requested as follows:

> In the event that the Court should find that the easement described in the Special Warranty Deed attached is non-exclusive, [the Solises] request . . . an interpretation of the easement to not allow [LFHL] use of the easement area for any use that presently or in the future

---

[1] William Rose testified that he is the "principal" of LFHL. The testimony at trial reflects that Donald Rowe works for LFHL and oversees activity in the subdivision. The testimony further reflects that, at that time, LFHL was in charge of the property owners' association.

would interfere with [the Solises'] use of the easement area for the reason specified in the easement agreement.

[LFHL] constructed the home that is now owned by [the Solises]. In doing so, LFHL constructed the home so that the eave of the home extended across the boundary line of Lot 28 into Lot 27 . . . . Additionally, [LFHL] installed the landscaping that is within the easement area that was granted to [Solis] on Lot 27.

A bench trial was conducted on the matter. Thereafter, in its judgment, the trial court found, in pertinent part, as follows: (1) the easement is valid; (2) the terms of the easement do not allow for LFHL to construct any permanent structure within the easement area; (3) the easement is nonexclusive, and the Solises may continue to use the easement area in a manner that does not interfere with LFHL's use of the property; (4) the Solises should be granted an easement to the land owned by LFHL as to the portion of Lot 27 over which the roof extends; (5) the Solises should be allowed to continue to place and maintain their dog run and landscape within the easement area so long as such use does not unreasonably interfere with the use of the easement area by LFHL; and (6) the Solises should recover court costs and attorney's fees incurred in the action. Based on these findings, the trial court rendered a declaratory judgment that: (1) LFHL is prohibited from constructing any permanent structure upon the easement area; (2) the Solises are granted an easement to allow the roof of their home to extend into the aerial space above Lot 27; (3) the Solises have the right to maintain the dog run and landscape that is located within the easement area so long as doing so does not unreasonably interfere with LFHL's use of that easement in a manner to which it is entitled to use it; and (4) the Solises are awarded attorney's fees in the amount of $8,306.07, as well as all court costs. This appeal followed.

## EASEMENT

In its sole issue, LFHL argues that the expressed, sole purpose of the easement at issue is unambiguous in its scope, which is to provide for the installation and maintenance of air conditioning units. Thus, it continues, the trial court's declaratory judgment, in which it found that the Solises were permitted to fence a portion of the easement as a dog run is unsupported as a matter of law because it is outside the scope of the easement and there is no evidence of consent on behalf of the servient estate owner.

**Standard of Review**

We review declaratory judgments under the same standards as other judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2020). In so doing, we look to the procedure used to resolve the issue below to determine the standard of review on appeal. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 65–66 (Tex. App.–Houston [14th Dist.] 2014, pet. denied). Here, the matter was resolved with a bench trial, and the trial court's judgment contains findings of fact and conclusions of law. On appeal, LFHL challenges the legal sufficiency of the trial court's finding that the easement permitted Solis to fence a portion of it as a dog run because it is outside the scope of the easement and there is no evidence of consent on behalf of the servient estate owner.

In reviewing the trial court's findings of fact for legal and factual sufficiency of the evidence supporting them, we apply the same standards as we apply in reviewing the sufficiency of the evidence supporting a jury's finding. *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 276 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex. Civ. App.–Dallas 1981, writ ref'd n.r.e.). Thus, in reviewing LFHL's legal insufficiency issue, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* at 807. We will sustain a no evidence complaint only if the record reveals (a) the complete absence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex. App.–Waco 1997, pet. denied). In addition, a trial court's conclusions of law are reviewed de novo as legal questions. *Id.* Incorrect conclusions of law will not require a reversal, however, if the controlling findings of fact will support a correct legal theory. *Id.*

In a bench trial where a trial court makes findings of fact, those findings have the same force and effect as a jury verdict. *Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.–Dallas 2020, pet. denied). Consequently, unchallenged findings of fact are

binding on this Court unless the contrary is established as a matter of law or no evidence supports the finding. *Id.*

## Governing Law

An easement is a non-possessory interest that authorizes its holder to use the property for a particular purpose. *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). When considering the terms of an easement, we apply basic principles of contract construction and interpretation. *Id.*; *see also Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.–Houston [1st Dist.] 2004, pet. denied); *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 427 (Tex. App.–Austin 1998, no pet.). The contracting parties' intentions, as expressed in the grant, determine the scope of the interest conveyed. *Marcus Cable*, 90 S.W.3d at 700–01. We read the terms of an easement as a whole to reach an adequate interpretation of the parties' intentions and to carry out the purpose for which the easement was created. *Id.* at 701; *DeWitt Cty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). Unless the language is ambiguous, we rely solely on the written instrument. *Adams*, 975 S.W.2d at 427–28. We assume that the parties intend for every clause to have some effect. *Eastman Software, Inc. v. Tex. Commerce Bank, N.A.*, 28 S.W.3d 79, 85 (Tex. App.–Texarkana 2000, pet. denied). When the provisions of a writing appear to conflict, we harmonize them, if possible, to reflect the intentions of the parties. *See Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983); *Dorsett v. Cross*, 106 S.W.3d 213, 220 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). To achieve this objective, we examine and consider the entire writing to harmonize and give effect to all its provisions, so that none will be rendered meaningless. *Dorsett*, 106 S.W.3d at 220. In harmonizing deed provisions, we must favor terms stated earlier in an agreement over subsequent terms. *See id.*

## Construction of Written Easement

The parties do not contest the geographical scope of the easement; rather, they contest only the interpretation of the rights granted by the easement. LFHL contends that the language of the easement regarding its scope is plain and unambiguous that it is "for the sole purpose of installing and maintaining air-conditioning unit(s) [thereon]" and LFHL "shall be able to use the Easement Area for any use that does not interfere with [the Solises'] use of the Easement Area for the specified purpose." The Solises do not address this argument in their brief. Rather, they argue that the trial court's findings and conclusions in its judgment can be supported under

alternate theories of law. We will address the Solises' alternate theories of recovery below. As to the written easement, based on our reading of its plain language, we agree with LFHL that it unambiguously states that the sole purpose for which it can be used is the installation and maintenance of air conditioning units and entitles the owner of Lot 27 to use the easement for any use that does not interfere with the installation and maintenance of air conditioning units on the easement by the owner of Lot 28.

**The Solises' Proposed Alternative Theories of Recovery**

The Solises argue that they are entitled to relief under three alternative theories of law—promissory estoppel, easement by estoppel, and implied easement—each of which they contend either was pleaded in their counterclaim or tried by consent. In their counterclaim, the Solises alleged that LFHL constructed the house on Lot 27, the eaves of which extend into Lot 28, and that LFHL installed the landscaping within the easement area. They similarly allege in their answer that LFHL bears responsibility for the eaves and landscaping existing withing the easement and aver that LFHL is "estopped by its promises [or] representations to now complain of the existence of *these* matters." (emphasis added). The Solises' pleadings make no reference to their entitlement to construct and maintain a dog run on the easement.

In their brief, the Solises set forth the elements of each of their three alternative theories of recovery and, separately, set forth the evidence generally supporting their case. They do not, however, attempt to provide any analysis or application of the evidence to these theories. Nonetheless, we trust that we understand the nature of their argument, i.e., two separate representations by Rowe serve to estop LFHL from limiting their use of the easement to its explicit scope and, thus, would permit their construction, use, and maintenance of a dog run within the easement. We conclude that these representations and whether the Solises believed or were entitled to rely on them in constructing a dog run within the easement boundaries were not facts which were pleaded either as an answer or in the Solises' counterclaim.

However even assuming arguendo that these facts were sufficiently pleaded or, ultimately, tried by consent, the evidence at trial still must support the trial court's implied conclusions of law that the Solises are entitled to relief either under a theory of promissory estoppel or easement by estoppel. *See Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 562 (Tex. App.–Corpus Christi 1995, writ denied). We, thus, will consider the sufficiency of the

6

evidence underlying these theories, as well as whether the Solises are entitled to an implied easement with regard to the eaves and landscaping.

*Easement by Estoppel*

The doctrine of easement by estoppel, or estoppel in pais, is an exception to the statute of frauds. *Cleaver v. Cundiff*, 203 S.W.3d 373, 375 (Tex. App.–Eastland 2006, pet. denied). Under this doctrine, a landowner may be estopped from denying the existence of an easement created by "representations" upon which another has detrimentally relied. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962). These representations, which may be verbal or nonverbal, must be made by the landowner. *Storms v. Tuck*, 579 S.W.2d 447, 452–54 (Tex. 1979); *Stallman v. Newman*, 9 S.W.3d 243, 246 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) (doctrine holds that owner of alleged servient estate may be estopped to deny existence of easement by making representations that have been acted upon by owner of alleged dominant estate). Once created, an easement by estoppel is binding upon successors in title if reliance upon the easement continues. *Cleaver*, 203 S.W.3d at 375; *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.–San Antonio 1996, writ denied).

The supreme court has recognized that the "exact nature and extent of the doctrine . . . have not been clearly defined." *Drye*, 364 S.W.2d at 209; *accord Storms*, 579 S.W.2d at 451. Although the application of the equitable doctrine of easement by estoppel depends upon the unique facts of each case, it has been applied to circumstances such as the dedication of a street, alley, or square; a conveyance with reference to a map or plat; and expenditures by the owner of the alleged easement for improvements on the servient estate. *See Drye*, 364 S.W.2d at 209–10. The doctrine also has been applied to circumstances involving expenditures on the dominant estate. *See Holden*, 929 S.W.2d at 132; *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285–86 (Tex. Civ. App.–Beaumont 1976, no writ); *N. Clear Lake Dev. Corp. v. Blackstock*, 450 S.W.2d 678, 683 (Tex. Civ. App.–Houston [14th Dist.] 1970, writ ref'd n.r.e.).

In the instant case, the Solises rely on two representations Alan claims Rowe made—one to him, and the other to Ivet. The first occurred when they were considering buying the house some time in 2016. According to Alan's testimony, Rowe told Ivet about the easement and stated that no one could encroach on it. Alan stated that they relied upon that representation when buying the house. The second representation is the December 8, 2017 text message response to Alan's email, in which Rowe told him that his plans for the dog run were approved.

However, we reiterate that for the doctrine to apply, the representation must be made by the owner of the servient estate. In the instant case, the record reflects that at the time the Solises purchased the home on Lot 28 and at the time Rowe sent the test message approving the dog run, LFHL was not the owner of Lot 27. Therefore, we conclude that the evidence conclusively establishes that neither of Rowe's representations could be the basis for the Solises' theory of easement by estoppel.

### *Promissory Estoppel*

The doctrine of promissory estoppel is derived from Section 90 of the Restatement of Contracts, which states: a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *See* RESTATEMENT (SECOND) OF CONTRACTS § 90 (Am. Law Inst. 1981); *see also Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.–Corpus Christi 2001, no pet.); *Aubrey v. Workman*, 384 S.W.2d 389, 393 (Tex. Civ. App.–Fort Worth 1964, writ ref'd n.r.e.). Promissory estoppel does not operate to create liability where it does not otherwise exist. *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988). Promissory estoppel does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. *'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972).

Promissory estoppel requires evidence of (1) a promise, (2) foreseeability of reliance, (3) actual, substantial, and reasonable reliance by the promisee to his or her detriment, and (4) that failure to enforce the promise would result in an injustice. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005); *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.–Houston [14th Dist.] 2012, pet. denied). A party to an arm's length transaction must exercise reasonable diligence in protecting his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party. *Comiskey*, 373 S.W.3d at 635.

Here, Alan testified that he was aware of the written easement when they purchased the home on Lot 28. The record reflects that the Solises were parties to an arm's length transaction. Whatever Rowe's role, the evidence demonstrates that he neither owned nor has any business relationship with the then-owner of the tract encumbered by the easement. Thus, we cannot

conclude that the Solises' reliance on his statement that "no one will ever encroach on that 10-foot easement[,]" in the face of the clear and unambiguous language in the easement itself that its "sole purpose" is for the installation and maintenance of air conditioning units, is reasonable. *See id.*

We once again reiterate that LFHL was not the owner of Lot 27 at the time when either of these statements were made. But even if justice could be said to require that, as current owner of the property, LFHL should be made accountable for either of these representations, the evidence does not support such an outcome. The evidence presented at trial was that William Rose was the "principal" of LFHL. Rose described Rowe as an "employee" who supervises or oversees activity at the lake, including "all the lots that are located in the subdivision." However, three factual elements must exist in order to create an agency relationship: (1) the manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking. ***Roberts v. Driskill Holdings, Inc.***, No. 03-99-000532-CV, 2000 WL 301195, at *2 (Tex. App.–Austin Mar. 23, 2000, no pet.) (mem. op., not designated for publication). "An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." ***Gaines v. Kelly***, 235 S.W.3d 179, 182 (Tex. 2007). There is no presumption of an agency relationship; rather, the party asserting agency has the burden of proving the relationship. ***IRA Res., Inc. v. Griego***, 221 S.W.3d 592, 597 (Tex. 2007). "An agent cannot bind a principal absent either actual or apparent authority." ***Sanders v. Total Heat & Air, Inc.***, 248 S.W.3d 907, 913 (Tex. App.–Dallas 2008, no pet.).

In the instant case, based on the scant testimony from Rose about Rowe's relationship to LFHL as an employee, who supervises or oversees activity at the lake, including all the lots that are located in the subdivision, we cannot conclude that his role for LFHL rose to the level of an agency relationship. Indeed, Rose denied knowledge that Rowe gave approval for the dog run and expressed skepticism as to the authenticity of the text message from Rowe to Alan that was introduced into evidence. Moreover, Alan's testimony that Rowe was a "representative" or acting on behalf of the property owner's association is not sufficiently linked to any communication from Rose to Alan, so as to amount to some show of apparent or implied

9

authority. At bottom, there is no evidence of any communications between Rose and Rowe or between Rose and the Solises to support the conclusion that Rowe was an agent of LFHL.

In sum, the Solises' reliance on Rowe's initial statement in an arm's length transaction and in the face of the clear, unambiguous language of the easement did not amount to reasonable reliance. Furthermore, the evidence does not support a conclusion that Rowe had authority from Rose, either actual or apparent, to act as an agent for him or LFHL. Therefore, we conclude that there is no evidence to support the implied conclusion of law that the easement should be modified or its enforcement relaxed based on the principle of promissory estoppel.

### Implied Easement - Prior Use[2]

The rationale underlying the implication of an easement based on prior use is not sheer necessity, but rather, "[t]he basis of the doctrine [of prior use easements] is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *Hamrick v. Ward*, 446 S.W.3d 377, 383 (Tex. 2014); *Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (Tex. 1952). There is a presumption that parties contracting for property do so "with a view to the condition of the property as it actually was at the time of the transaction," and, therefore, absent evidence to the contrary, such conditions which openly and visibly existed at the time are presumed to be included in the sale. *Miles v. Bodenheim*, 193 S.W. 693, 696–97 (Tex. Civ. App.–Texarkana 1917, writ ref'd). In establishing a prior use easement, the party claiming the easement must prove: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the use of the claimed easement was open and apparent at the time of severance; (3) the use was continuous, so the parties must have intended that its use pass by grant; and (4) the use must be necessary to the use of the dominant estate. *Ward*, 446 S.W.3d at 383; *Drye*, 364 S.W.2d at 207–08. Because the actual intent of the parties at the time of severance is often elusive, these factors effectively serve as a proxy for the contracting parties' intent. *Ward*, 446 S.W.3d at 383.

In the instant case, the record reflects that the easement was created in conjunction with the sale of the house on Lot 28 by LFHL to Delp. LFHL also owned Lot 27 at this time. *See id.*

---

[2] We note that LFHL has not challenged specifically the trial court's findings regarding the eaves of the house on Lot 28 or the landscaping. However, even though unchallenged findings of fact can be binding on this Court, such may not be the case if such findings are not supported by the evidence. *See Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.–Dallas 2020, pet. denied).

The record reflects that the eaves of the house on Lot 28 overhung the easement on Lot 27 in an open, apparent, and continuous fashion prior to the severance of LFHL's unity of ownership in the two lots and have continued to do so to this day. *See id.* Implying an easement to permit the eaves to overhang Lot 27 is necessary to the use of Lot 28 and the structure thereon. Therefore, we conclude that the trial court's implied conclusion of law that there exists an implied easement for the purpose of permitting the eaves in the House on Lot 28 to overhang Lot 27 is supported by sufficient evidence.

However, the same cannot be said for the landscaping. Rose testified that he could not recall when the landscaping near the front of the house was installed. Based on our review of the record, we have not found any evidence, nor have the parties directed us to any such evidence, which supports that the landscaping at issue was in existence when the two lots still were held under unity of ownership by LFHL. Accordingly, we conclude that there is not sufficient evidence to support an implied easement for the landscaping. *See id.* Appellant's sole issue is sustained.

### ATTORNEY'S FEES AND COURT COSTS

Both parties requested attorney's fees and court costs in conjunction with their respective petitions for declaratory judgment. The Declaratory Judgment Act permits an award of "reasonable and necessary" costs and attorney fees "as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2020). Where, as here, the "extent to which a party prevailed has changed on appeal, we must remand the issue of attorney fees and costs to the trial court for reconsideration of what is equitable and just." *See Farmers Group, Inc. v. Geter*, 620 S.W.3d 702, 712 (Tex. 2021).

### CONCLUSION

We have sustained Appellant's sole issue. Having done so, we ***reverse*** the trial court's judgment in part, ***vacate*** all findings, decrees, and orders in the judgment, and ***render*** the following findings, decrees, and orders in their place:

> The Court, after considering the papers filed herein, the evidence, and arguments of counsel, finds that:

11

(1) The easement granted by Lake Front Harbour Lights, LLC in that Special Warranty Deed dated August 23, 2012, recorded as Instrument No. 2012-00011437 of the Official Records of Henderson County, Texas is an existing and valid grant of an easement;

(2) The dominant estate of the easement agreement identified in item number (1) above is now owned by the Defendants/Counter-Plaintiffs, Alan Solis and Ivet Moore Solis, having been granted to them in that General Warranty Deed with Vendor's Lien from Robert Kyle Delp, et al., to Alan Solis and Ivet Moore Solis on date of August 16, 2016, recorded as Instrument No. 2016-00012160 of the Official Records of Henderson County, Texas;

(3) The terms of the easements identified in items numbered (1) and (2) above permit Plaintiff in this cause of action to make use of the easement area, so long as such use that does not interfere with Defendants/Counter-Plaintiffs' use of the easement area for the sole purpose specified in the easement, which is for installing and maintaining air conditioning units.

(4) The easements identified in items numbered (1) and (2) above are nonexclusive easements, and the Plaintiff, as current owner of the servient estate, may continue to use the easement area in a manner that does not interfere with the Defendants/Counter-Plaintiffs' use of the easement area for the sole purpose specified in the easement, which is for installing and maintaining air conditioning units.

(5) The Defendants/Counter-Plaintiffs should be granted an easement to that land owned by the Plaintiff, Lake Front Harbour Lights, LLC, as to the portion of said land over which the Defendants/Counter-Plaintiffs' roof currently extends into the property owned by Lake Front Harbour Lights, LLC, being Lot 23R, Block D of the Replat of Harbour Lights Villa, according to the plat recorded in Cabinet F, Slide 288 of the Plat Records of Henderson County, Texas;

(6) Based on the scope of the easements identified in items numbered (1) and (2) above, the Defendants/Counter-Plaintiffs are prohibited from continuing to place, use, and maintain their dog run and landscaping within the easement area as identified in items numbered (1) and (2) above.

IT IS THEREFORE ORDERED, ADJUDGED, ANO DECREED that the following relief is granted:

(1) Plaintiff is entitled to continue to use the easement area, which is identified in the General Warranty Deed with Vendor's Lien from Robert Kyle Delp, et al. to Alan Solis and Ivet Moore Solis on date of August 16, 2016, recorded as Instrument No. 2016-00012160 of the Official Records of Henderson County, Texas, in any manner that does not interfere with the Defendants/Counter-Plaintiffs' use of the easement area for the sole purpose specified in the easement, which is for installing and maintaining air conditioning units.

(2) Defendants/Counter-Plaintiffs are granted an easement to allow the roof of their home located on the property conveyed to them in the deed from Robert Kyle Delp, et al, to extend as it currently exists into the aerial space above the property currently owned by the Plaintiff, being Lot 23R, Block D of the replat of Harbour Lights Villa, according to the plat recorded in Cabinet F, Slide 288 of the Plat Records of Henderson County, Texas;

(3) Defendants/Counter-Plaintiffs are prohibited from continuing to place, use, and maintain their dog run and landscaping within the easement area identified in Instrument No. 2016-00012160 of the Official Records of Henderson County, Texas.

IT FURTHER IS ORDERED, ADJUDGED, AND DECREED that the parties are entitled to judgment that the easement that currently is owned by the Defendants/Counter-Plaintiffs as described in Document No. 2016-00012160 is declared to be a nonexclusive easement, that the Defendants/Counter-Plaintiffs may continue to use this easement for its

expressed, sole purpose, which is for installing and maintaining air conditioning units, that the Defendants/Counter-Plaintiffs are prohibited from continuing to place, use, and maintain their dog run and landscaping in the easement area, and that the Plaintiff, as current owner of the servient estate, is entitled to use the easement area in a manner that does not unreasonably interfere with the Defendants/Counter-Plaintiffs' use of the easement for its expressed, sole purpose.

IT FURTHER IS ORDERED, ADJUDGED, AND DECREED that Defendants/Counter-Plaintiffs are granted an easement to allow the roof of their home located on the property conveyed to them in the deed from Robert Kyle Delp, et al. to extend as it currently exists into the aerial space above the property owned by the Plaintiff, being Lot 23R, Block D of the replat of Harbour Lights Villa, according to the plat recorded in Cabinet F, Slide 288 of the Plat Records of Henderson County, Texas.

IT FURTHER IS ORDERED, ADJUDGED, AND DECREED that all writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary.

Furthermore, because the extent to which the parties prevailed has changed on appeal, we *reverse* the trial court's award of attorney's fees and court costs to the Solises and *remand* the parties' respective claims for attorney's fees and court costs to the trial court for reconsideration of what awards of attorney's fees and court costs, if any, are equitable and just to each party.

**BRIAN HOYLE**
Justice

Opinion delivered March 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2023**

**NO. 12-22-00190-CV**

**LAKE FRONT HARBOUR LIGHTS, LLC,**
Appellant
V.
**ALAN SOLIS AND IVET MOORE SOLIS,**
Appellee

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CV20-0015-392)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** in part, we **vacate** all findings, decrees, and orders in the judgment, and **render** the following findings, decrees, and orders in their place:

The Court, after considering the papers filed herein, the evidence, and arguments of counsel, finds that:

(1) The easement granted by Lake Front Harbour Lights, LLC in that Special Warranty Deed dated August 23, 2012, recorded as Instrument No. 2012-00011437 of the Official Records of Henderson County, Texas is an existing and valid grant of an easement;

14

(2) The dominant estate of the easement agreement identified in item number (1) above is now owned by the Defendants/Counter-Plaintiffs, Alan Solis and Ivet Moore Solis, having been granted to them in that General Warranty Deed with Vendor's Lien from Robert Kyle Delp, et al., to Alan Solis and Ivet Moore Solis on date of August 16, 2016, recorded as Instrument No. 2016-00012160 of the Official Records of Henderson County, Texas;

(3) The terms of the easements identified in items numbered (1) and (2) above permit Plaintiff in this cause of action to make use of the easement area, so long as such use that does not interfere with Defendants/Counter-Plaintiffs' use of the easement area for the sole purpose specified in the easement, which is for installing and maintaining air conditioning units.

(4) The easements identified in items numbered (1) and (2) above are nonexclusive easements, and the Plaintiff, as current owner of the servient estate, may continue to use the easement area in a manner that does not interfere with the Defendants/Counter-Plaintiffs' use of the easement area for the sole purpose specified in the easement, which is for installing and maintaining air conditioning units.

(5) The Defendants/Counter-Plaintiffs should be granted an easement to that land owned by the Plaintiff, Lake Front Harbour Lights, LLC, as to the portion of said land over which the Defendants/Counter-Plaintiffs' roof currently extends into the property owned by Lake Front Harbour Lights, LLC, being Lot 23R, Block D of the Replat of Harbour Lights Villa, according to the plat recorded in Cabinet F, Slide 288 of the Plat Records of Henderson County, Texas;

(6) Based on the scope of the easements identified in items numbered (1) and (2) above, the Defendants/Counter-Plaintiffs are prohibited from continuing to place, use, and maintain their dog run and landscaping within the easement area as identified in items numbered (1) and (2) above.

IT IS THEREFORE ORDERED, ADJUDGED, ANO DECREED that the following relief is granted:

(1) Plaintiff is entitled to continue to use the easement area, which is identified in the General Warranty Deed with Vendor's Lien from Robert Kyle Delp, et al. to Alan Solis and Ivet Moore Solis on date of August 16, 2016, recorded as Instrument No. 2016-00012160 of the Official Records of Henderson County, Texas, in any manner that does not interfere with the Defendants/Counter-Plaintiffs' use of the easement area for the sole purpose specified in the easement, which is for installing and maintaining air conditioning units.

(2) Defendants/Counter-Plaintiffs are granted an easement to allow the roof of their home located on the property conveyed to them in the deed from Robert Kyle Delp, et al, to extend as it currently exists into the aerial space above the property currently owned by the Plaintiff, being Lot 23R, Block D of the replat of Harbour Lights Villa, according to the plat recorded in Cabinet F, Slide 288 of the Plat Records of Henderson County, Texas;

(3) Defendants/Counter-Plaintiffs are prohibited from continuing to place, use, and maintain their dog run and landscaping within the easement area identified in Instrument No. 2016-00012160 of the Official Records of Henderson County, Texas.

IT FURTHER IS ORDERED, ADJUDGED, AND DECREED that the parties are entitled to judgment that the easement that currently is owned by the Defendants/Counter-Plaintiffs as described in Document No. 2016-00012160 is declared to be a nonexclusive easement, that the Defendants/Counter-Plaintiffs may continue to use this easement for its expressed, sole purpose, which is for installing and maintaining air conditioning units, that the Defendants/Counter-Plaintiffs are prohibited from continuing to place, use, and maintain their dog run and landscaping in the easement area, and that the Plaintiff, as current owner of the servient

estate, is entitled to use the easement area in a manner that does not unreasonably interfere with the Defendants/Counter-Plaintiffs' use of the easement for its expressed, sole purpose.

IT FURTHER IS ORDERED, ADJUDGED, AND DECREED that Defendants/Counter-Plaintiffs are granted an easement to allow the roof of their home located on the property conveyed to them in the deed from Robert Kyle Delp, et al. to extend as it currently exists into the aerial space above the property owned by the Plaintiff, being Lot 23R, Block D of the replat of Harbour Lights Villa, according to the plat recorded in Cabinet F, Slide 288 of the Plat Records of Henderson County, Texas.

IT FURTHER IS ORDERED, ADJUDGED, AND DECREED that all writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary.

It is further ORDERED, ADJUDGED and DECREED, because the extent to which the parties prevailed has changed on appeal, we **reverse** the trial court's award of attorney's fees and court costs to the Solises and **remand** the parties' respective claims for attorney's fees and court costs to the trial court for reconsideration of what awards of attorney's fees and court costs, if any, are equitable and just to each party; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*